[No. 27306-3-II. Division Two. January 10, 2003.]

THE STATE OF WASHINGTON, *Respondent*, v. ELEMENE TINIE SUA, *Appellant*.

*Pattie Mhoon*, for appellant.

*Gerald A. Horne, Prosecuting Attorney*, and *John C. Hillman, Deputy*, for respondent.

MORGAN, J. — Elemene Tinie Sua appeals a conviction for indecent liberties by forcible compulsion. He contends in part that the trial court erred by admitting exhibits 1 and 2, and by denying his motions for mistrial. We reverse and remand for further proceedings.

In early December 2000, Sua, Karen Williams, and Williams' three daughters were all living together in a motel room in Pierce County. Two of the daughters were S.S., age 16, and A.S., age 19.

On December 5, 2000, S.S. told Williams that earlier that day Sua had taken indecent liberties with her by putting his hands down her pants. Williams and her daughters went to the motel office, where A.S. called 911.

Before the police arrived, S.S. told A.S. that Sua had put his hands down the front and back of her pants. She said he also had touched her breasts.

When Deputies Kolp and Unfred arrived, they spoke with Williams, S.S., and Sua. It was apparent that Williams and Sua had been drinking. Williams initially "said she hadn't witnessed anything."[1] Later, however, she said that Sua had been saying he wanted another child, and that he wanted S.S. to bear that child. S.S. said that Sua had kissed her on the mouth, groped her breasts and buttocks, and put his hands down her pants. Like her mother, she said that Sua had been talking about wanting another child, and wanting her (S.S.) to bear that child. Sua denied wrongdoing; he also explained, however, that as he, Williams, and S.S. were all lying on the motel room bed, he might have put his hands down S.S.'s pants in the mistaken belief that she was Williams.

At the deputies' request, S.S. and Williams each wrote a statement on a printed form. S.S. said:

> Tonight my daddy said to my mom that he was going to have a baby by me and my mom stepped and and [sic] said you're not going to have sex with my daughter. Then he got mad but before that he had me against the wall by the bathroom and asked for a hug. I gave him a hug then he started kissing me and he tryed [sic] to force his tounge [sic] in my mouth then he started putting his hands down my pants and rubbed me un-appriopriately [sic]. And I said no to him then he said It doesn't matter what I say or do because what he says and does is right even if I don't think so and I don't like it. He put his hands in the back of my pants and inside my panties then he tried to rub my chest and I don't like it.[2]

Williams said:

> [Sua] said he wanted a child by someone before he died. He said he can not have kids by me that that [sic] the only way that he can have a child is with my Daughter. My Daught[er] is only 16 years old. She's too young to even think about a family. He said he didn't care what I thought as long as he was able to have a

---

[1] Report of Proceedings (RP) at 223.

[2] Ex. 1.

child by somebody else. There is a no-contact order in affect [sic].[3]

Neither S.S. nor Williams signed her written statement under oath or penalty of perjury. Each did, however, sign beneath a printed paragraph that read:

> The above is a true and correct statement to the best of my knowledge. No threats or promises have been made to me nor any duress used against me.[4]

On December 6, 2000, the State charged Sua with indecent liberties by forcible compulsion. Before trial, Sua moved to suppress his pretrial statements on the ground that the deputies had unlawfully obtained them. After a hearing held under CrR 3.5, the court denied the motion.

A jury trial was held in March 2001. All the evidence was produced on March 12. The State presented five witnesses and three exhibits. Its witnesses were S.S., Williams, A.S., Deputy Kolp and Deputy Unfred. Its exhibits were S.S.'s pretrial written statement, Williams' pretrial written statement, and a tape recording of A.S.'s call to 911. Sua did not present evidence.

S.S. testified first. She said that Sua had *not* taken indecent liberties with her. Although she admitted making her earlier oral and written statements to the police, she said they were a "cry for attention"[5] and were not true.

At the end of S.S.'s testimony, the State offered her pretrial written statement as exhibit 1. Sua objected, claiming the statement was inadmissible hearsay. The court admitted the written statement and excused the jury for the morning recess.

After the jury went out, counsel and the court continued to discuss the admissibility of S.S.'s written statement. The prosecutor said:

---

[3] Ex. 2.

[4] Exs. 1, 2.

[5] RP at 109.

Your Honor, State has not admitted any of these prior statements as substantive evidence. State has brought this forth to show that the witness has made prior inconsistent statements. They've been offered for impeachment value. The specific statements that the witnesses made previously, which contradicted with the testimony today, and only the contradicting statements, have been admitted for the purposes of impeachment, not as substantive evidence.

I am not opposing Counsel being allowed a limiting instruction to the jury at the time when all the other instructions are read. I think that is clearly proper under the WPIC [Washington Pattern Jury Instructions: Criminal] and under case law. . . .

Counsel can argue before the jury that these aren't substantive evidence, but on the same hand, I have not argued to the jurors that these are substantive evidence.[6]

Defense counsel requested a limiting instruction, which the court ultimately agreed to give. Thus, when the jury returned, the court instructed as follows:

Prior to our recess, State's Exhibit No. 1 was admitted into evidence, and that statement is what we refer to as a prior written statement of a witness. I have an instruction that pertains to Exhibit No. 1 and will pertain possibly to other exhibits that are admitted in this case.

This evidence has been and will be introduced in this case on the subject of prior written statements and statements made to police officers for the limited purpose of assisting you in evaluating the credibility of the witnesses. If you find such prior statements were, in fact, made, they are not to be considered by you as proof of the matters recited in such statements.[7]

Williams testified next. She said that she had been "upset" and "drinking that night,"[8] and that she had based her pretrial written statement on what she had been told by

---

[6] RP at 148-49.

[7] RP at 156.

[8] RP at 168.

S.S. When she had confronted S.S. about the truth of S.S.'s allegations, S.S. had said the allegations were not true.

At the end of Williams' testimony, the State offered her pretrial written statement as exhibit 2. When defense counsel objected as hearsay, the prosecutor responded, "State is admitting it for purposes of impeachment, Your Honor."[9] The court then instructed the jury:

> As we have explained once before, evidence has been introduced in this case, Exhibit No. 2, on the subject of prior written statements and statements made to police officers. For the limited purpose of assisting you in evaluating the credibility of the witnesses, if you find such prior statements were, in fact, made, they are not to be considered by you as proof of the matters recited in such statements.
>
> Given that instruction to the jury, Exhibit No. 2 will be admitted.[10]

A.S. testified next. She said that she had been sleeping in the motel room at the time of the alleged incident. She had not seen anything, and her knowledge was limited to what she had heard from her sister and mother. She had been the one to call 911 because her mother "had a few beers that night" and "was very hysterical . . . ."[11]

At the end of A.S.'s testimony, the State offered a tape recording of A.S.'s phone call to 911. When defense counsel objected as hearsay, the court told the jury:

> Okay. The Court is going to admit Exhibit 3. However, the jury is instructed that this evidence is introduced in this case and it concerns the subject of prior witness statements and statements made to police officers for the limited purpose of assisting you, the jury, in evaluating the credibility of the witnesses. If you find such prior statements were, in fact, made, they are not to be considered by you as proof of the matters recited in such statements.

---

[9] RP at 176.

[10] RP at 177.

[11] RP at 201.

> With that limiting instruction, the Court will admit the tape.[12]

After Deputies Kolp and Unfred had testified, the State rested. It was about 4 P.M. on March 12, and the court excused the jury for the day. Sua then moved to dismiss, arguing:

> Essentially, Your Honor, we don't have any substantive evidence in this case. All the evidence that's been presented by the State is impeachment evidence, and that's not substantive evidence and it can't be used, as the Court has already instructed the jury, as proof of the matter asserted in the impeachment statements. All the witnesses have testified that this did not occur. The only evidence that said it did is the impeachment evidence. And just as the jury can't use it, the Court can't use it, either.[13]

The State claimed the evidence was sufficient to convict. After saying it would rule the next morning, the court adjourned for the day.

The next morning, March 13, the court sua sponte invited additional argument on "why Exhibits 1 and 2 should or should not be admitted under 801(d)(1) as substantive evidence and not only for impeachment."[14] Citing ER 801(d)(1)(i), *State v. Smith*,[15] and *State v. Nelson*,[16] the State argued—in stark contrast to the position it had taken earlier—that exhibits 1 and 2 were admissible not just for impeachment, but also for substantive use. Defense counsel argued that neither exhibit was admissible for substantive use because neither had been made under oath or penalty of perjury. He also stated:

> I think there's another issue here. During the course of the trial, the State brought all this in as impeachment evidence.

---

[12] RP at 269-70.

[13] RP at 273.

[14] RP at 291.

[15] 97 Wn.2d 856, 651 P.2d 207 (1982).

[16] 74 Wn. App. 380, 874 P.2d 170, *review denied*, 125 Wn.2d 1002 (1994).

There was no argument, no request that the Court deal with this as substantive evidence. The Court's read a limiting instruction, appropriately so, to the jury several times prior to this impeachment evidence coming in. At this time, if the Court were to expound and change this from impeachment evidence to substantive evidence, we're dealing with major confusion to the jury because we've been reading them these instructions throughout. I think I'd be in a position of asking the Court to declare a mistrial.[17]

After listening to these additional arguments, the court ruled that exhibits 1 and 2, S.S.'s and Williams' written statements, could be used to prove the truth of the matters asserted therein. Peculiarly however, the court refused to tell the jury about this new ruling. It stated:

I am not going to give a special limiting or unlimiting instruction to the jury. The case will go to the jury with the appropriate instructions at the end of the trial, which will not single out or try to explain or recreate what's happened. It will simply remain silent on anything pertaining to how this was admitted.

In that sense, I feel that the defendant will get the benefit of the limiting instruction with the jury and therefore potentially receive a favorable verdict in this case. However, I'm not going to repeat the limiting instruction since I've now ruled that it's not strictly applicable.[18]

When the prosecutor inquired how she should argue in closing, the court responded: "I do not want you to go into any explanation that you've been limited and now you're not[,]" but "you can certainly act as though there was no limiting instruction . . . ."[19]

Defense counsel then made the first of several motions for mistrial. He predicted that the changed ruling "is going to be confusing to the jury . . . ."[20] and that Sua would not

---

[17] RP at 299-300.

[18] RP at 302-03.

[19] RP at 306-07.

[20] RP at 317.

receive a fair trial as a result. The trial court denied the motion.

Sua opted not to present evidence, so the trial court proceeded to instruct the jury. The court stated in instruction 5:

> Evidence has been introduced in this case on the subject of witnesses' oral statements to police officers and Audio 911 tape. You must not consider these evidence as for truth of the matters asserted in those statements, but only for determining the credibility of the witness.[21]

The court said nothing about whether the jury could use exhibits 1 and 2, S.S.'s and Williams' *written* statements, to prove the truth of the matters asserted therein.

In her initial closing argument, the prosecutor argued that exhibits 1 and 2 could be used to prove the truth of the matters asserted therein, even though the jury had not been so informed. She stated:

> I want to go into the evidence which shows . . . that he is guilty of indecent liberties.
>
> First of all, there's evidence . . . of the victim's handwritten statement on the night the incident occurred. Exhibit 1 . . . . She wrote in her own words what had occurred.[22]

After reading exhibit 1 aloud, the prosecutor further stated:

> When [S.S.] came in to court and said that nothing had happened, that it was all made up, that she lied to the police, what you have to determine, ladies and gentlemen, is was she telling the truth when she wrote this statement or was she telling the truth when she was testifying on the stand.
>
> . . . .
>
> . . . She told the truth that night because she just wanted him to stop. She didn't like what he did, and she wanted it to stop. So she told her mom, and the police got called.[23]
>
> . . . .

---

[21] Clerk's Papers (CP) at 10.

[22] RP at 319-20.

[23] RP at 320-21, 322.

The bottom line is this. You have to decide, was [S.S.] telling the truth then or was she telling the truth on the stand? If you believe that she was telling the truth when she wrote this statement, then the defendant is guilty. He's guilty as charged.[24]

In his closing argument, defense counsel tried to explain instruction 5. He stated:

Substantive evidence is the actual testimony of the witnesses, what they said in open court under oath in front of you, the judge, everybody, and exhibits that were admitted. Impeachment evidence is other types of statements that a person or a witness made to some other people when they weren't under oath and they weren't before a formal hearing.

What that instruction says is you can't base any type of decision on the facts that are contained in those other statements. . . . [T]hat's the law, and it's the law because the courts have found that it's prior statements that aren't in court and aren't under oath and under the penalty of perjury and in front of the formal proceeding that we have. They aren't as reliable. They're not as trustworthy as what you hear in open court. And that's why they say that.[25]

In her rebuttal closing argument, the prosecutor again argued that S.S.'s and Williams' written statements could be used to prove the truth of the matters asserted therein. She stated:

What the defendant said to the police, is that substantive evidence? Absolutely. Is it important what the defendant said to the police? Absolutely. . . . Yes, oral statements, verbal statements, made outside of this courtroom are not substantive evidence, but you know what? Written statements are substantive evidence. They were made outside of this courtroom, and you can consider this as substantive evidence. Let's make that clear.[26]

The jury began its deliberations mid-afternoon on March 13. After an hour or so, it sent out a note asking: "Is it true

[24] RP at 328.

[25] RP at 329-30.

[26] RP at 346.

or is it false that State exhibits # 1 and # 2 can only be used for the purpose(s) of evaluating the credibility of the witnesses?"[27] The court did not respond that day.

The next morning, the court held a hearing on how it should respond. At about 10:30 A.M., it sent the jury a note stating: "False. See Instruction 5."[28] Defense counsel again moved for mistrial, but the motion was denied.

At about 1:30 P.M. that day, the jury sent out a note saying it could not reach a verdict. In open court with the parties present, the court asked each juror if the jury was deadlocked. Although 11 jurors said yes, the court ordered that deliberations continue.

At about 4 P.M. that day, the jury again said "that they're hung."[29] The court and the parties convened without the jury, and the defense made another motion for mistrial. After denying that motion, the court instructed the jury to return the next morning and continue deliberating.

During the afternoon of the next day, March 15, the jury returned a verdict of guilty. The court later imposed a sentence of 67 months.

I

■ The primary issue on appeal is whether the trial court properly admitted exhibits 1 and 2. To resolve that issue intelligently, we must examine ER 801(c) and ER 801(d)(1). Each was taken verbatim from the corresponding Federal Rule of Evidence, so its drafters were, in effect, the advisory committee that wrote the federal rules.

■ ER 801(c) embodies the basic definition of hearsay. It has three clauses, which we differentiate as follows:

■ "Hearsay" is a statement, [2] other than one made by the declarant while testifying at the trial or hearing, [3] offered in evidence to prove the truth of the matter asserted.

[27] CP at 48.

[28] CP at 48.

[29] RP at 380.

The middle clause is the one pertinent here. It provides in effect that the out-of-court statement of an in-court witness is generally hearsay. By hypothesis, an out-of-court statement is not made at the present trial or hearing. Necessarily then, an out-of-court statement is hearsay when offered to prove the truth of the matter asserted—even if it was made by someone who is now an in-court witness (i.e., even if it was made by someone who is presently under oath, observable by the trier of fact, and subject to cross-examination).

This effect can be confirmed by considering how ER 801(c)'s middle clause could have been worded. It could easily have said that hearsay is a statement, "other than one made by a declarant *who testifies* at the trial or hearing," offered in evidence to prove the truth of the matter asserted. Instead, it says that hearsay is a statement, "other than one made by a declarant *while testifying* at the trial or hearing," offered in evidence to prove the truth of the matter asserted. The effect is to bring within the definition of hearsay any out-of-court statement offered to prove its truth, even if made by a witness at the present trial or hearing.

If ER 801(c)'s middle clause provides as just indicated, it must have a purpose that is additional to, and not satisfied by, the declarant's being under oath, observable, and subject to cross-examination. And indeed it does. It is founded, according to the federal advisory committee that drafted it, "upon an unwillingness to countenance the general use of prior prepared statements . . . ."[30]

---

[30] 56 F.R.D. 183, 295. We take this remark from the advisory committee's note to *Fed. R. Evid.* (FRE) 801(d)(1), but it applies equally to ER 801(c)'s middle clause. Indeed, the committee's "unwillingness to countenance the general use of prior prepared statements" is a theme that runs throughout the rules it proposed. In addition to ER 801(c) and ER 801(d)(1), examples include ER 803(5), the hearsay exception for past recollection recorded, and ER 804(b)(1), the hearsay exception for depositions and other prior testimony. ER 803(a)(5) precludes the use of an in-court witness' pretrial statement unless the proponent shows that the witness "now has insufficient recollection to enable the witness to testify fully and accurately . . . ." ER 804(b)(1) precludes the use of an in-court witness' pretrial statement, even if made in deposition or at an earlier trial, unless the proponent

An example will illustrate this concern about "the general use of prior prepared statements." Suppose that a woman sees an auto accident. She tells the plaintiff's investigator how the accident happened. The investigator reports back to the plaintiff's attorney, who "carefully prepares" a written statement that favorably describes the accident from his point of view.[31] The attorney meets with the witness in his office, presents the statement, and goes over it with her. She agrees to it and signs it. At trial, the attorney calls the woman to the stand, establishes her identity, and authenticates her written statement. He then offers the written statement to prove how the accident happened. At the same time, he indicates he will not have any further direct examination. If the written statement is not deemed hearsay because the woman is on the stand at trial, the attorney will be entitled to use her "carefully prepared" written statement as a substitute for direct examination in open court. If the written statement is deemed hearsay even though the woman is on the stand, the attorney will not be entitled to use her pretrial statement, and will instead be required to conduct an extemporaneous direct examination in open court. Choosing to require direct examination in open court, the advisory committee intentionally crafted ER 801(c)'s middle clause so that "hearsay" includes the out-of-

---

shows that the witness is unavailable to testify at the present trial or hearing. Speaking about ER 803(a)(5), the federal advisory committee commented: "[T]he absence of the requirement [of insufficient recollection], it is believed, would encourage the use of statements carefully prepared for purposes of litigation under the supervision of attorneys, investigators, or claim adjusters." 56 F.R.D. 183, 307.

[31] This example would be the same if the investigator and attorney were working for the defendant rather than the plaintiff, or for either party in a criminal case. As the advisory committee stated or at least implied, the principle is the same in all these situations. *See* 56 F.R.D. 183, 307 (permitting unfettered use of pretrial statements "would encourage the use of statements carefully prepared for purposes of litigation under the supervision of attorneys, investigators, or claim adjusters").

court statement of an in-court witness when offered to prove the truth of the matter asserted.[32]

Although the advisory committee sought to preclude "the *general* use of prior prepared statements as substantive evidence," it also recognized that "particular circumstances call for a contrary result."[33] Accordingly, it drafted and proposed a version of *Fed. R. Evid.* (FRE) 801(d)(1) that would have provided:

> (d) A statement is not hearsay if—
>
> (1) *Prior statement by witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with his testimony, or (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive, or (C) one of identification of a person made after perceiving him.[34]

This proposal enumerated "three situations" (now called exemptions) in which the out-of-court statement of an in-court witness would be deemed nonhearsay despite the wording of ER 801(c)'s middle clause.[35] This case involves only the first of those three. From here on then, we limit our discussion to the exemption described in FRE 801(d)(1)(A), from which Washington's ER 801(d)(1)(i) was later "taken verbatim."[36]

The advisory committee submitted its proposed FRE 801(d)(1)(A) to the United States Supreme Court. The Court adopted the proposed rule and submitted it for Congress to review. In Congress, it went first to the House, then to the Senate, and finally to a conference committee.

---

[32] This does not mean, of course, that the attorney cannot use an out-of-court statement to impeach the credibility of the person who made it. *See State v. Williams*, 79 Wn. App. 21, 26-27, 902 P.2d 1258 (1995).

[33] 56 F.R.D. 183, 295-96 (emphasis added).

[34] 56 F.R.D. 183, 293.

[35] 56 F.R.D. 183, 295.

[36] *Smith*, 97 Wn.2d at 859.

In the House, the proposal was referred to the House Committee on the Judiciary. That committee thought it was too broad and should be significantly narrowed. Accordingly, the committee recommended an amendment consisting of the following italicized words:

> (d) A statement is not hearsay if—
>
> > (1) the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is
> >
> > > (A) inconsistent with his testimony *and was given under oath subject to cross-examination, and subject to the penalty of perjury at a trial or hearing or in a deposition . . . .*[37]

The committee commented:

> Although there was some support expressed for the Court Rule, based largely on the need to counteract the effect of witness intimidation in criminal cases, the Committee decided to adopt a compromise version of the Rule similar to the position of the Second Circuit. The Rule as amended draws a distinction between types of prior inconsistent statements . . . and allows only those made while the declarant was subject to cross-examination at a tr[ia]l or hearing or in a deposition, to be admissible for their truth. . . . The rationale for the Committee's decision is that (1) unlike in most other situations involving unsworn or oral statements, there can be no dispute as to whether the prior statement was made; and (2) the context of a formal proceeding, an oath, and the opportunity for cross-examination provide firm additional assurances of the reliability of the prior statement.[38]

The full House adopted its committee's recommendation.

In the Senate, the proposed rule was referred to the Senate Committee on the Judiciary. That committee

---

[37] H.R. 5463, 93d Cong. (2d Sess. 1974); *see also Federal Rules of Evidence: House Comm. on the Judiciary*, H.R. Rep. No. 93-650, at 13 (1973), *reprinted in* 1974 U.S.C.C.A.N. 7075, 7086; 120 Cong. Rec. 2383 (1974); 4 James F. Bailey III & Oscar M. Trelles II, The Federal Rules of Evidence Legislative Histories and Related Documents 347 (1980).

[38] *Federal Rules of Evidence: House Comm. on the Judiciary*, H.R. Rep. No. 93-650, at 13 (1973), *reprinted in* 1974 U.S.C.C.A.N. 7075, 7086-87.

thought that the House amendment was improvident, and that the proposed rule should be returned to its initial form. The committee commented:

> The House severely limited the admissibility of prior inconsistent statements by adding a requirement that the prior statement must have been subject to cross-examination, thus precluding even the use of grand jury statements. The requirement that the prior statement must have been subject to cross-examination appears unnecessary since this rule comes into play only when the witness testifies in the present trial. At that time, he is on the stand and can explain an earlier position and be cross-examined as to both.
>
> The requirement that the statement be under oath also appears unnecessary. Notwithstanding the absence of an oath contemporaneous with the statement, the witness, when on the stand, qualifying or denying the prior statement, is under oath.[39]

The full Senate adopted its committee's recommendation.

The proposed rule then went to a conference committee. That committee thought that the House amendment should be adopted if it were broadened to cover statements made before a grand jury. Accordingly, the committee recommended that the proposed rule be amended as follows:

> (d) A statement is not hearsay if—
>
> (2) the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is
>
> (i) inconsistent with the declarant's testimony, *and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition* . . . .

The committee commented:

> The Conference adopts the Senate amendment with an amendment, so that the rule now requires that the prior inconsistent statement be given under oath subject to the

---

[39] *Federal Rules of Evidence: Senate Comm. on the Judiciary*, S. Rep. No. 93-1277, at 15 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7051, 7062.

penalty of perjury at a trial, hearing, or other proceeding, or in a deposition. The rule as adopted covers statements before a grand jury.[40]

The conference committee's recommendation was enacted into law, effective July 1, 1975.[41] Washington copied it verbatim, effective April 2, 1979, and it became ER 801(d)(1)(i).[42]

Since 1979, the Washington courts have decided two cases on which the State relies here. In 1982, in a case called *State v. Smith*,[43] the Washington Supreme Court addressed the rule's requirement that the offered statement have been "given . . . at a trial, hearing, or other proceeding . . . ." A woman voluntarily gave the police a written statement that implicated the defendant in a crime. She signed the statement under oath before a notary public. When she testified inconsistently at the defendant's trial, the trial court admitted her written statement for substantive use. After discussing a 1976 Ninth Circuit case called *United States v. Castro-Ayon*,[44] the Washington Supreme Court noted that in the case presently at bench "the complaining witness-victim voluntarily wrote the statement herself, swore to it under oath with penalty of perjury

---

[40] *Federal Rules of Evidence: Conf. Comm.*, H.R. CONF. REP. No. 93-1597, at 10 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7098, 7104. *See also United States v. Castro-Ayon*, 537 F.2d 1055, 1057 (9th Cir.), *cert. denied*, 429 U.S. 983 (1976) (conference committee "consciously intended to include grand-jury proceedings within the ambit of 'other proceedings' ").

[41] Pub. L. No. 93-595, 88 Stat. 1926, 1938 (1975) (approved January 2, 1975).

[42] 91 Wn.2d at 1162.

[43] 97 Wn.2d 856.

[44] 537 F.2d 1055 (9th Cir. 1976). In *Castro-Ayon*, a border patrol agent arrested 11 illegal aliens. He placed them under oath, pursuant to a federal statute that empowered him to do that. He obtained and tape-recorded out-of-court statements from some of them. At trial, three of those who had given statements testified inconsistently, and the trial court admitted their statements to prove the truth of the matters asserted. The Ninth Circuit held "that Congress intended the term 'other proceeding' to extend beyond grand jury proceedings . . . ." and that the earlier statements had been taken during an "other proceeding" within the meaning of the rule. 537 F.2d at 1058. Similar cases include *United States v. Perez*, 870 F.2d 1222 (7th Cir.), *cert. denied sub nom. Calderon-Abeja v. United States*, 493 U.S. 844 (1989) and *United States v. Livingston*, 661 F.2d 239 (D.C. Cir. 1981).

before a notary, admitted at trial she had made the statement and gave an inconsistent statement at trial where she was subject to cross examination."[45] The court then concluded that the statement had been given in an "other proceeding," and that "under the totality of these circumstances"[46] the statement fell within ER 801(d)(1)(i).

In 1994, in a case called *State v. Nelson*,[47] Division One of this court seems to have addressed the rule's requirement that the offered statement have been "given under oath subject to the penalty of perjury," as well as the rule's requirement that the offered statement have been "given . . . at a trial, hearing, or other proceeding." A woman told police that she was a prostitute and that the defendant was her pimp. An officer reduced her statement to a writing that she signed before a notary public. Although the notary did not administer an oath, the writing apparently recited, pursuant to RCW 9A.72.085, " 'that it is certified or declared by the person to be true under penalty of perjury . . . .' "[48] Concluding that the statement could "be regarded as . . . sworn"[49] because RCW 9A.72.085 had been complied with, Division One held that the statement had been given in an "other proceeding," and that the statement fell within the scope of ER 801(d)(1)(i).

Against this backdrop, the State asks us to rule that ER 801(d)(1)(i) permitted the admission of exhibits 1 and 2, S.S.'s and Williams' out-of-court written statements, to prove the truth of the matters asserted therein. The State acknowledges that neither statement was "given under oath and subject to [the] penalty [of] perjury[,]"[50] and that the "trial court[] admittedly broke new ground with [its] ER

---

[45] *Smith*, 97 Wn.2d at 863.

[46] *Smith*, 97 Wn.2d at 863.

[47] 74 Wn. App. 380, 874 P.2d 170 (1994).

[48] *Nelson*, 74 Wn. App. at 389-90 (quoting RCW 9A.72.085(1)).

[49] *Nelson*, 74 Wn. App. at 390.

[50] Br. of Resp't at 22.

801(d)(1) ruling."[51] Citing *Smith* and *Nelson* however, the State asserts that "[t]he written statements of S.S. and Williams carried sufficient guaranties of truthfulness to allow admissibility under ER 801(d)(1)(i)."[52]

We decline this request for several reasons. First, we cannot just ignore ER 801(d)(1)(i)'s requirement that the out-of-court statement of an in-court witness be "given under oath subject to the penalty of perjury." We are obligated to construe ER 801(d)(1)(i) according to its plain meaning, and to give effect to all of its language.[53] To do that, we must hold that exhibits 1 and 2 do not satisfy ER 801(d)(1)(i), because they were not "given under oath subject to the penalty of perjury."

Second, we cannot just ignore the compromise that Congress reached and that Washington later adopted. That compromise was expressly and carefully crafted, and it is not our function to upset it.

Third, neither *Smith* nor *Nelson* supports the State's request. The declarant in *Smith* gave her statement under oath subject to penalty of perjury, for she actually took an oath from a notary public. The declarant in *Nelson* gave her statement under oath subject to penalty of perjury, for she complied with RCW 9A.72.085. Neither declarant in this case actually took an oath, complied with RCW 9A.72.085, or in any other way gave her statement "under oath subject to the penalty of perjury."

Fourth, we have not found any case anywhere that supports the State's position, although we have found at least one that does not. In *United States v. Day*,[54] the Sixth Circuit ruled that FRE 801(d)(1)(A) did not authorize the admission of a tape-recorded statement that a witness had made before trial to a law enforcement officer, because the

---

[51] Br. of Resp't at 25.

[52] Br. of Resp't at 20.

[53] *City of Bellevue v. Hellenthal*, 144 Wn.2d 425, 431, 28 P.3d 744 (2001); *State v. Radan*, 143 Wn.2d 323, 330, 21 P.3d 255 (2001).

[54] 789 F.2d 1217 (6th Cir. 1986).

statement was not shown to have been made under oath subject to the penalty of perjury.[55]

Finally, we cannot transform ER 801(d)(1)(i) into a catch-all provision that would require only a showing of particularized guaranties of trustworthiness for the out-of-court statements of an in-court witness. The federal courts adopted the catchall concept,[56] but Washington expressly declined to do so.[57]

We conclude that exhibits 1 and 2 were hearsay within the meaning of ER 801(c)'s middle clause; that they were not exempted from the operation of that clause by ER 801(d)(1)(i); and that the trial court erred by admitting them as substantive evidence. Given the lack of other substantive evidence, it cannot reasonably be argued, and neither party attempts to argue, that the error was harmless. Accordingly, we vacate the conviction, reverse the judgment, and remand for further proceedings.

---

[55] *Day*, 789 F.2d at 1221; *see also United States v. Armijo*, 5 F.3d 1229, 1232 (9th Cir. 1993) ("prior inconsistent statement was inadmissible under Rule 801(d)(1)(A) . . . because it was not given under oath"; no reversal because error not raised at trial). *Cf. State v. Johnson*, 40 Wn. App. 371, 378-79, 699 P.2d 221 (1985) (possibly holding statement inadmissible under ER 801(d)(1)(i) due to lack of proceeding and/or lack of oath).

[56] When the Federal Rules were adopted in 1975, the catchall concept was codified as FRE 803(24) and FRE 804(b)(5). In 1997, it was recodified, with no real change in substance, as FRE 807. FRE 807 today provides:

A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

[57] ER 803(b) cmt. ("The [Washington] drafters decided not to adopt any catchall provision."); ER 804(b)(5) cmt. (same).

## II

A second issue on appeal is whether the trial court erred by denying Sua's motion for a mistrial. We hold that it did, even though we review only for abuse of discretion.[58] Even if one assumes—which is not true here—that exhibits 1 and 2 were admissible for substantive use, so that the trial court's sua sponte ruling at the end the State's case was correct, it is unreasonable to tell a jury that important evidence may not be used to prove the truth of the matters asserted therein, and then—without telling the jury that the ruling has been altered—invite and allow counsel to do exactly that. Such a procedure is bound to maximize confusion and minimize the chances of a rational verdict. It clearly had those effects here, where the jury, soon after starting deliberations, asked the court to clarify how it could use S.S.'s and Williams' written statements. The court's response—"False. See Instruction 5"—did nothing to cure the problem, for without knowing that the court had changed the limiting instructions it had given during trial, a reasonable juror would never have thought that instruction 5 was intended to distinguish between oral and written statements. The procedure by which exhibits 1 and 2 were presented to the jury was so badly flawed that Sua did not receive a fair trial.

## III

We briefly address several more issues. The first and potentially most important is the remedy to which Sua is now entitled. It might be dismissal with prejudice on double jeopardy grounds,[59] or only a new trial.[60] As the issue has not been briefed or argued by either party on appeal, we

---

[58] *State v. Johnson*, 124 Wn.2d 57, 76, 873 P.2d 514 (1994).

[59] *See Burks v. United States*, 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978); *State v. Hennings*, 100 Wn.2d 379, 670 P.2d 256 (1983).

[60] *See Lockhart v. Nelson*, 488 U.S. 33, 109 S. Ct. 285, 102 L. Ed. 2d 265 (1988); *see also State v. Landon*, 69 Wn. App. 83, 848 P.2d 724 (1993).

refrain from deciding it, leaving it instead for the trial court to work out following remand.

The second is whether Sua's pretrial statements will be sufficient to establish a corpus delicti if, on remand, the State fails to produce substantive evidence additional to that which it produced at the first trial. If Sua is now entitled to a dismissal with prejudice on double jeopardy grounds—a proposition not yet established—this issue will be moot. If Sua is entitled only to a new trial, this issue will depend on evidence produced at or before the new trial, and on objections made at or before the new trial.[61] Either way, the issue cannot properly be decided now, so we leave it for the trial court to work out following remand.

A third issue is whether the police obtained Sua's statements involuntarily or in violation of *Miranda v. Arizona*.[62] The trial court found they did not, and its findings are supported by substantial evidence.[63] We hereby resolve that issue in favor of the State.

A fourth issue is how, if at all, the 911 tape can be used on remand. Although that issue was discussed at trial,[64] it has not been raised or briefed by either party on appeal, and we have not considered it. We do not rule that A.S.'s statements on the tape may or may not be used to prove the truth of the matters asserted therein,[65] or that A.S.'s statements on the tape may or may not be used to impeach.[66]

Any remaining arguments need not be reached or lack merit.

---

[61] This observation obviates the State's contention that Sua failed to make proper objections at the first trial.

[62] 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[63] *See State v. Hill*, 123 Wn.2d. 641, 644, 870 P.2d 313 (1994).

[64] *See* RP at 365-66.

[65] *See Beck v. Dye*, 200 Wash. 1, 9-10, 92 P.2d 1113 (1939); *State v. Oughton*, 26 Wn. App. 74, 80, 612 P.2d 812, *review denied*, 94 Wn.2d 1005 (1980); *cf. State v. Karpenski*, 94 Wn. App. 80, 111-12, 971 P.2d 553 (1999).

[66] *See State v. Williams*, 79 Wn. App. 21, 26-27, 902 P.2d 1258 (1995); *cf. State v. Johnson*, 90 Wn. App. 54, 64, 950 P.2d 981 (1998).

52

Reversed and remanded for further proceedings.

Quinn-Brintnall, A.C.J., and Bridgewater, J., concur.