# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48689-0-II |
| Respondent, | |
| v. | |
| BRANNON I. JONES, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Brannon I. Jones appeals his jury trial convictions for first degree trafficking in stolen property, unlawful possession of methamphetamine, and third degree driving while license suspended. He argues that (1) the evidence is insufficient to support the first degree trafficking in stolen property conviction, (2) he received ineffective assistance of counsel when defense counsel failed to object to the State's improper closing argument in which the State (a) argued that the jury should infer guilt from Jones's "pre-arrest silence," and (b) presented substantive argument based on impeachment evidence, and (3) the trial court erred when it imposed discretionary legal financial obligations (LFOs) without first inquiring into Jones's ability to pay. Br. of Appellant at 10. We hold that the evidence was sufficient to support the first degree trafficking in stolen property conviction and that Jones's ineffective assistance of counsel claims

No. 48689-0-II

fail.  We further hold that Jones failed to preserve his challenge to his LFOs.[1]  Accordingly, we

affirm Jones's convictions and the imposed discretionary LFOs.[2]

FACTS

I. BACKGROUND

On October 21, 2015, Chrystal and Michael Weld discovered that numerous hand tools,

power tools, and other related items had been stolen from the home they were renovating.  The

Welds reported the theft to Grays Harbor County Sheriff's Deputy Carson Steiner.  Michael Weld

valued the missing tools at over $3,000.  The Welds' family and friends were aware that they were

working on their home.  Jones is Michael Weld's nephew.

A short time after the theft, Travis Delbrouck contacted Kelly D. Marks and asked Marks

if he wanted to buy some tools.  Marks arrived at Delbrouck's father's home and examined the

tools, which were behind a shed or small trailer behind the house.  Marks agreed to pay Delbrouck

$500 for approximately 30 tools, and he paid Delbrouck over the course of the next few days.

Marks later testified that Jones was present during the transaction and helped load tools into

Marks's truck, but Marks asserted that only he and Delbrouck engaged in the transaction.

The day after he finished paying Delbrouck for the tools, Marks was talking with "some

guys" and learned that the tools were probably stolen.  Report of Proceedings (RP) at 36.  One of

---

[1] RAP 2.5.

[2] Jones also asks us to decline to impose appellate costs.  Under RAP 14.2, a commissioner or clerk of this court has the ability to determine whether appellate costs should be imposed based on the appellant's ability to pay and prior determinations regarding indigency.  If the State decides to pursue costs for this appeal, a commissioner can make a determination as to whether costs should be imposed.  Accordingly, we do not address this issue further.

the men Marks was talking to, Jeremy Keith, told Marks that the person who owned the tools would be satisfied if he just got the tools back. According to Marks, he gave Keith some of the tools to return, and they planned to meet the next day to return the remaining tools.

During his investigation, Deputy Steiner learned that Marks had the Welds' tools. Deputy Steiner went to Marks's parents' house and found Marks loading the tools into his vehicle. Marks told Deputy Steiner that he had just learned that the tools were stolen. Marks gave the tools to Deputy Steiner, and the tools were returned to the Welds.

After returning the tools, Marks gave two statements, which Marks later admitted were not consistent. In his second statement, which Marks asserted was the truth, Marks told Deputy Steiner that Jones was present during the transaction with Delbrouck but that he (Marks) did not "really talk[ ] with him" and he paid only Delbrouck. RP at 38.

Deputy Steiner then attempted to locate Jones. A few days later, Deputy Steiner saw Jones driving a car and followed the car to a house. After Jones stopped the car, he attempted to flee on foot. While Deputy Steiner was chasing him, Jones removed his sweatshirt and discarded it. After arresting Jones, Deputy Steiner retrieved the sweatshirt and discovered methamphetamine and drug paraphernalia in the sweatshirt's pocket.

After advising Jones of his *Miranda*[3] rights, Deputy Steiner asked Jones why he had tried to run. Jones responded that he "knew [the deputy] wanted to talk to him about some stolen property" and that he had an arrest warrant from the Department of Corrections. RP at 84. Deputy Steiner told Jones that others who had been involved in the sale of the stolen property had given

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

statements and that this was Jones's chance to be honest. Jones admitted that he knew Delbrouck had sold some tools to Marks, but Jones asserted he did not get any money from this transaction. But Jones also told Deputy Steiner that Delbrouck frequently gave him money.

Grays Harbor County Sheriff's Deputy Keith A. Peterson also interviewed Jones about the stolen tools. Jones admitted that he had helped load the tools into a vehicle, but he asserted that he was not paid for the tools and that he was "being made out to be the fall guy." RP at 54. Jones also told Deputy Peterson that he "figured [the tools] were probably stolen" but that he "didn't know that for sure." RP at 56.

Jones also asserted that at the time of the transaction, he had been up for several days using methamphetamine and "that he didn't quite remember everything regarding that whole situation." RP at 56. Jones told Deputy Peterson that his friends, including Delbrouck, would give him the drugs. Jones also stated that he believed Delbrouck had used some of the money from selling the tools to purchase methamphetamine and that Delbrouck had given him some of that methamphetamine.

## II. PROCEDURE

### A. CHARGES AND TESTIMONY

The State charged Jones with first degree trafficking in stolen property, unlawful possession of a controlled substance—methamphetamine, and third degree driving while license suspended. The State's witnesses testified to the facts set out above. Delbrouck was the sole defense witness.

4

Delbrouck testified that Jones was not involved in the sale of the tools to Marks and that

Jones was not paid anything for the tools. Delbrouck admitted, however, that his testimony

differed from a statement that he gave Deputy Steiner. The State questioned Delbrouck about this

statement:

> Q [State].     Now, in that statement is it true that you had indicated that you had agreed to sell the tools and split the money with the defendant?
>
> A [Delbrouck].     That's what I told Deputy Steiner at the time, yes.
>
> Q.     And isn't it true that you made a statement at the end each time, "Kelly Marks paid me. I gave half of the money to Brannon"; is that correct?
>
> A.     Yes, it is.
>
> Q.     Okay. And Brannon, you meant Brannon Jones?
>
> A.     Yes.
>
> Q.     Okay. So your statement to Deputy Steiner was that you had given half of the proceeds from the sale of the stolen property to Mr. Jones?
>
> A.     Yes, it was.

RP at 111-12. Defense counsel did not object to this testimony and the jury was not instructed that

this evidence, or any other evidence, was admitted for a limited purpose.[4]

B. STATE'S CLOSING ARGUMENT

In its closing argument, the State argued that Jones's failure to go to law enforcement when

he learned that he was being sought in connection with the stolen property and his attempt to flee

were evidence of guilt. Defense counsel did not object to this argument.

---

[4] Before trial, the State stated in a trial memorandum that it "reserve[d] the right under ER 607 to use statements of both Mr. Marks and Mr. Delbrouck to Deputy Steiner and Sergeant Lewis for impeachment, should either or both witnesses offer recantations on the witness stand." CP at 30. Jones did not respond to this argument in his trial brief, and there is nothing in the record on appeal related to whether the admissibility of Delbrouck's statement was addressed by the court.

The State also argued that Delbrouck's statement to Deputy Steiner was a reliable statement that proved that Jones had agreed to sell the tools and split the money with Delbrouck. Defense counsel did not object to this argument.

The jury found Jones guilty of first degree trafficking in stolen property, unlawful possession of a controlled substance—methamphetamine, and third degree driving while license suspended. The case proceeded to sentencing.

C. SENTENCING

In its sentencing memorandum, the State requested $2,375 in mandatory and discretionary LFOs and mandatory fines. The State noted that Jones used heroin and methamphetamine and that he would steal from his family to support his drug use. It also noted that Jones was "not disabled and appears healthy enough to earn a living once released from prison," and asserted that Jones had "the ability to pay all legal financial obligations." Clerk's Papers (CP) at 89.

In his sentencing memorandum, Jones requested a residential drug offender sentencing alternative. Jones also "recommend[ed]" that the trial court impose the same LFO's the State requested. CP at 95. He did not assert he was unable to pay these LFOs.

The trial court did not question Jones directly about his ability to pay the LFOs, but it stated, "If you turn your life around you're going to be able to, you know, have a job, make at least partial payments on these minimal costs." RP at 186. The State then asked the trial court to make an express finding on Jones's ability to pay the LFOs. The trial court stated:

So he's not disabled. He's at least far [sic]—at this point. Now, if something comes out—you get out of there and they figure out something is wrong, you can petition to regarding your legal financial obligations. You know, if you're—if you come out of there and you stay clean and sober, you've got—part of the process is going to be—to go around and, you know, clean up the wreckage, make amends with your family about what was done. All right.

RP at 187. Defense counsel did not object to the LFOs or to the trial court's finding that Jones had or would have the ability to pay the LFOs. Ultimately, the trial court imposed $1,432.87 in mandatory and discretionary LFOs.

Jones appeals his convictions and the discretionary LFOs.

ANALYSIS

Jones argues that (1) the evidence was insufficient to prove the first degree trafficking in stolen property charge, (2) he received ineffective assistance of counsel because defense counsel failed to object to portions of the State's closing argument, and (3) the trial court erred when it imposed LFOs without first examining his ability to pay. Jones's sufficiency and ineffective assistance of counsel claims fail, and we decline to address the discretionary LFO argument because it was not preserved.

I. SUFFICIENCY OF THE EVIDENCE

Jones first argues that the evidence was insufficient to prove that he "knowingly" trafficked in stolen property. We disagree.

A. STANDARD OF REVIEW

Evidence is sufficient if, viewed in the light most favorable to the State, it permits a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Drum*, 168 Wn.2d 23, 34-35, 225 P.3d 237 (2010). We draw all reasonable inferences from the evidence

in favor of the State and interpret the evidence most strongly against the defendant. *Drum*, 168 Wn.2d at 35. Circumstantial evidence receives the same weight as direct evidence. *State v. Varga*, 151 Wn.2d 179, 201, 86 P.3d 139 (2004). And we defer to the fact finder on the resolution of conflicting testimony, credibility determinations, and the persuasiveness of the evidence. *State v. Cantu*, 156 Wn.2d 819, 830-31, 132 P.3d 725 (2006).

B. SUFFICIENT EVIDENCE OF KNOWLEDGE ELEMENT

To commit first degree trafficking in stolen property, the State had to prove that Jones "*knowingly* trafficked in stolen property." CP at 74 (Jury Instruction 7) (emphasis added); RCW 9A.82.050(1). Jones contends that at best the evidence established that he "thought it [was] a possibility that the property was stolen" and that believing that there was a possibility that the property was stolen was not sufficient to establish he knowingly trafficked the stolen property. Br. of Appellant at 10.

The trial court instructed the jury that knowingly means to have "information that would lead a reasonable person in the same situation to believe that a fact exists." CP at 76 (Jury Instruction 13). The evidence here, taken in the light most favorable to the State, is sufficient to establish that Jones acted knowingly. Jones was Michael Weld's nephew and apparently had knowledge that the Welds were remodeling their home, which would have allowed Jones to know that the tools were present in the Welds' unoccupied home. Jones was present when Delbrouck sold the tools for significantly less than the $3,000 value estimated by Michael Weld. The sale took place at an unusual location, behind a shed or small trailer located behind Delbrouck's father's home. And Jones told Deputy Peterson that he "figured [the tools] were probably stolen."

RP at 56. Additionally, in his original statement to Deputy Steiner, Delbrouck stated that he and Jones had agreed to sell the tools and split the money from the sale.[5]

These facts, taken in the light most favorable to the State, would allow a reasonable person to conclude that Delbrouck was selling stolen property and that Jones, who shared in the profits, was involved in this sale. Accordingly, Jones fails to establish that the evidence of knowledge was insufficient to support the first degree trafficking in stolen property conviction.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

Jones next argues that he received ineffective assistance of counsel when defense counsel failed to object to the State's closing argument in which the State (1) argued that the jury should infer guilt from Jones's pre-arrest silence,[6] and (2) presented substantive argument based on impeachment evidence. These arguments fail.

### A. STANDARD OF REVIEW

When an ineffective assistance of counsel claim is based on defense counsel's failure to object, the appellant must show that (1) the failure to object fell below an objective standard of reasonableness, (2) the trial court would have sustained an objection, and (3) there is a reasonable probability that the outcome of the trial would have been different. *Strickland v. Washington*, 466

---

[5] As discussed below, because this evidence was not admitted for the limited purpose of impeachment, we can consider Delbrouck's statement as substantive evidence. *State v. Myers*, 133 Wn.2d 26, 36, 941 P.2d 1102 (1997) ("[A]bsent a request for a limiting instruction, evidence admitted as relevant for one purpose is deemed relevant for others.").

[6] Although Jones's assignments of error, issue statement, and section headings refer to the State's use of *post*-arrest silence, Jones argues that the State should not have referenced the fact Jones failed to come forward *before* he was arrested. *See* Br. of Appellant at 12 ("In the case at bar the state specifically argued that the jury should infer guilt from the defendant's exercise of his right to silence prior to arrest."). We address Jones's actual argument.

U.S. 668, 687, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. McFarland*, 127 Wn.2d 322, 334,

337, 899 P.2d 1251 (1995); *State v. McLean*, 178 Wn. App. 236, 248, 313 P.3d 1181 (2013).  Our

scrutiny of counsel's performance is highly deferential, and the appellant must overcome a strong

presumption of reasonableness.  *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 694, 327 P.3d 660

(2014) (citing *Strickland*, 466 U.S. at 689; *McFarland*, 127 Wn.2d at 335).

B.  PRE-ARREST SILENCE

Jones argues that defense counsel should have objected to the following argument that

emphasized his pre-arrest silence:

> And Deputy Steiner asks [Jones]—if he asks—he asks [Jones] if he knows
> why he was looking for him and [Jones's] response is something about stolen
> property.  So that right there, [Jones] knew the property was stolen.  He knew he
> was involved in a sale.  *He didn't go to law enforcement and say, hey, you know,*
> *what—these are my uncle's tools.  I didn't know they were my uncle's tools.  This—*
> *this is my family, I want to come clean and report what happened.  He didn't do*
> *that*.  Instead, the moment that he saw that Deputy Steiner was after him, he took
> off.  And why did he do that, because he was responsible for the stolen tools being
> stolen and he knew that he had committed a crime.

RP at 148-49 (emphasis added); Br. of Appellant at 13.  He argues that this argument invited the

jury to infer guilt based on his failure to come forward when he learned that the police wanted to

question him, that this argument violated his Fifth Amendment and Article I, section 9 right to

silence, and that defense counsel's failure to object to this improper argument was deficient

performance.

Even if the State's argument was improper and defense counsel should have objected,

Jones does not establish a reasonable probability that the outcome of the trial would have been

different.  *McFarland*, 127 Wn.2d at 334; *McLean*, 178 Wn. App. at 248.  In regard to the first

degree trafficking in stolen property charge, the jury heard evidence that (1) Jones was Michael

Weld's nephew and knew the Welds were remodeling their home when the tools were stolen, (2) Jones agreed to sell the tools with Delbrouck and was paid, either in cash or in drugs, for assisting with the sale, (3) Jones knew the tools were sold for $500, a price significantly lower than their value, (4) Jones knew that the sale took place in an unusual location, (5) Jones attempted to flee when Deputy Steiner stopped him, and (6) Jones admitted that he had attempted to flee because he knew the deputy wanted to talk to him about some stolen property. Given this evidence, we hold that it is unlikely that the outcome of the trial as to the trafficking charge would have been different if defense counsel had objected to this argument and the trial court had sustained this objection.

Additionally, Jones's unlawful possession and third degree driving while license suspended convictions were offenses based on evidence that was totally unrelated to the challenged argument.[7] Thus, there is no reasonable likelihood that the outcome of the trial would have differed as to these charges. Accordingly, his ineffective assistance of counsel claim fails.

C. FAILURE TO OBJECT TO SUBSTANTIVE ARGUMENT RELATED TO DELBROUCK'S STATEMENT

Jones next argues that defense counsel's failure to object to the State's closing argument using Delbrouck's prior statements as substantive evidence was ineffective assistance of counsel. Jones asserts that these prior statements could be used only for impeachment purposes.[8] We disagree.

---

[7] We address this ineffective assistance of counsel claim in relation to all three charges because Jones asks us to reverse all three convictions based on ineffective assistance of counsel.

[8] We note that Jones is not arguing that defense counsel was ineffective for failing to move to limit the use of Delbrouck's statement. He is arguing only that defense counsel was ineffective for failing to object to the State's *closing argument* using this evidence as substantive evidence.

11

Specifically, Jones objects to defense counsel's failure to object to the following argument:

> In that statement he had told Deputy Steiner that he had agreed with Mr. Delbrouck [sic] to sell the tools and split the money, and he specifically stated each time [Marks] paid me and gave half of the money to the defendant per their agreement. Now, again, this was a reliable statement, had the opportunity to review it and certified it was true and correct.
>
> Also, this was the first and only time that Deputy Steiner interviewed Mr. Delbrouck. It's not like he interviewed—he talked to Mr. Delbrouck and then Mr. Delbrouck had a chance—an opportunity to think of, okay, well, what—what can I make up to make things better for me. And then get another contact from. Deputy Steiner a day or two later after he had an opportunity to fabricate his statement and then make up some story about the defendant helping him to get a beater [sic] deal. This was the first time that Deputy Steiner interviewed Mr. Delbrouck. And there was nothing—there was no circumstances indicating that he was coerced in any way to make the statement. He made the statement that he did because that was the truth.

RP 151-152; Br. of Appellant at 16.

Jones never objected to the admission of Delbrouck's statements on any ground or requested a limiting instruction related to that evidence. Because the evidence was presented without limitation, the jury could consider this evidence for any purpose. *See State v. Myers*, 133 Wn.2d 26, 36, 941 P.2d 1102 (1997) ("[A]bsent a request for a limiting instruction, evidence admitted as relevant for one purpose is deemed relevant for others."). Given this, to the extent the State used Delbrouck's prior statements as substantive evidence in its argument, that argument was not improper.

Furthermore, Jones's reliance on *State v. Sua*, 115 Wn. App. 29, 60 P.3d 1234 (2003), is not persuasive. Unlike here, the evidence in *Sua* had been admitted for the limited purposes of impeachment and the trial court had instructed the jury that it was admitted solely for that purpose. *Sua*, 115 Wn. App. at 33-34.

Accordingly, because the evidence related to Delbrouck's statement was admitted without limitation, defense counsel had no grounds to object to this argument, and Jones fails to show deficient performance on this ground. Because Jones does not establish deficient performance, his ineffective assistance of counsel claim fails.

### III. DISCRETIONARY LFOs

Finally, Jones argues, for the first time on appeal, that the trial court erred when it imposed discretionary LFOs without conducting an individualized inquiry into whether Jones had the current or future ability to pay as required under *State v. Blazina*, 182 Wn.2d 827, 837-38, 344 P.2d 680 (2015), and RCW 10.01.160(3). We exercise our discretion under RAP 2.5(a) and decline to address this issue because Jones failed to object to the trial court's imposing discretionary LFOs—in fact, in his sentencing memorandum Jones requested that the trial court impose discretionary LFOs.[9] RAP 2.5(a); *Blazina*, 182 Wn.2d at 832-33 (appellate court may exercise it discretion to reach unpreserved claims of error).

---

[9] We note that Jones's failure to object to the discretionary LFOs was likely a strategic decision because he was seeking a residential drug offender sentencing alternative.

No. 48689-0-II

Because the evidence was sufficient to support the first degree trafficking in stolen property conviction, Jones's ineffective assistance of counsel claims fail, and Jones has failed to preserve his LFO challenge, we affirm the convictions and the discretionary LFOs.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

MAXA, A.C.J.

LEE, J.