11 P.3d 318 (2000)
103 Wash.App. 1
STATE of Washington, Respondent,
v.
James F. AINSLIE, Appellant.
No. 44504-9-I.
Court of Appeals of Washington, Division 1.
August 21, 2000.
Publication Ordered October 27, 2000.
*319 Scott Allan Decker, Stephanie N. Davenport, Everett, for Appellant.
Deanna Jennings Fuller, King County Deputy Prosecuting Attorney, Seattle, for Respondent.
ELLINGTON, J.
James Ainslie was convicted of stalking and his conviction was affirmed on RALJ appeal. We affirm, because the evidence was sufficient for the trier of fact to convict Ainslie of stalking, and the stalking statute is not unconstitutionally vague as applied to the facts of this case.

Facts
At trial, testimony was elicited that in early May 1995, J.P. began to observe a man, later identified as Ainslie, sitting in a red car near the mailboxes in front of her house. J.P. was 14 years old at the time. J.P. testified that Ainslie sat in his car near the mailboxes about three or four times a week, usually between three and six in the afternoon. Ainslie's car was visible from the front window of her home, located approximately 60-100 feet away.
J.P. and her friend, C.P., sometimes rode their bikes or walked past Ainslie's car and looked in it out of curiosity, thinking that Ainslie was waiting to pick someone up at the nearby park-and-ride. Ainslie never got out of his car or said anything to J.P.
J.P. testified that on one occasion, as she was walking up a hill to a friend's house, Ainslie pulled up on the opposite side of the two-lane street, got out of his car, and stood behind it. This scared J.P., who turned around and ran back toward a nearby store.
J.P.'s father, Daniel Proffitt, testified that as he and J.P. were leaving their home another day, they saw Ainslie parked nearby. Ainslie started his car and left, and Proffitt followed him. Ainslie attempted to elude them, but they cornered him in a cul-de-sac. Proffitt yelled at him through the car window that he "knew what [Ainslie] was up to and... wasn't going to tolerate it." Proffitt also testified that he saw Ainslie in his yard and took down his license plate number, but by the time Proffitt had called the police, Ainslie had left the property.
Carla Peterson, Proffitt's neighbor and C.P.'s mother, testified that she often observed a red car parked by the mailboxes, *320 and that there was a man standing near the car on a number of occasions. Peterson took down the license plate number of the vehicle, which was registered to Ainslie. She also testified that she had seen a man walking between the Proffit's house and hers, but could not identify Ainslie in court as the person she saw.
Proffitt sent J.P. to Spokane to live with her sister for about one month. Proffitt and C.P. testified that during J.P.'s absence, Ainslie was not seen near the Proffitt residence. Approximately one month after J.P.'s return, Ainslie again began parking in the area. Rather than park by the mailboxes, however, Ainslie parked near a mattress store on Aurora Avenue near her home. J.P. observed him in this new location about three times a week.
Detective Thomas Leppich testified that he was assigned to follow up on the complaint and contacted Ainslie in the process. In an interview with Leppich on October 6, 1995, Ainslie told the detective that he liked to go for long rides, but because his car was uncomfortable, he frequently stopped to stretch and happened to pick the same spot. Ainslie acknowledged the presence of a girl between 11 and 13 years of age in the neighborhood, but denied knowing or following her. Ainslie also acknowledged having been followed by Proffitt in his car, and that a police officer had warned him about his parking in front of the residences, and that he responded by parking across the street.
Ainslie testified in his defense. He admitted that he parked in the neighborhood, but explained that he did not intend to frighten anyone. He testified that he worked at his brother's house in a different neighborhood until around 4:00 p.m., but because he lived by himself, he stopped his car on the way home to pass time. He also stated that he took this particular route because the shortest alternative route took him past a cemetery where some of his relatives were buried, which he said "hurts my feelings."
Ainslie confirmed that before Detective Leppich interviewed him, a police officer pulled him over and told him that one of the neighbors complained that he "looked or ... got out of [his] car and looked at three girls." Ainslie testified that he explained why he was there, and the officer believed him and "let [him] go." Ainslie testified that the first time he understood that he frightened J.P. was when he spoke with Detective Leppich, and said he had not returned to the neighborhood since.

Discussion
A. Sufficiency of the Evidence
Ainslie argues there was insufficient evidence to convict him of stalking.[1] In *321 reviewing a sufficiency of the evidence challenge, the question is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2] All reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant.[3] Circumstantial evidence and direct evidence are equally reliable.[4] We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence.[5]
Ainslie argues that the State did not provide sufficient evidence that any of the three elements of stalking under RCW 9A.46.110(1) were met. Ainslie first contends that his actions did not meet the definition of "follow" under RCW 9A.46.110(1)(a) because he did not deliberately maintain contact with a specific person, i.e., J.P. Ainslie argues that the evidence no more establishes that he followed J.P. than any other person in the neighborhood. Ainslie cites State v. Lee,[6] in which both defendants followed and came into actual contact with their victims. While it is true that the facts of this case are not those in Lee, the evidence nevertheless supports the conclusion that Ainslie followed J.P. Ainslie regularly parked in front of the mailboxes near J.P.'s house during times when J.P. was in the neighborhood, he got out of his car just as J.P. was walking toward him, and he was seen in J.P.'s yard.[7] Perhaps most telling is the fact that neither Proffitt nor C.P. saw Ainslie while J.P. was in Spokane, but Ainslie reappeared in his parked car once J.P. returned.
Second, Ainslie contends that J.P's fear was not objectively reasonable.[8] We disagree. An unknown man repeatedly parked within sight of a 14-year-old girl. While she was walking alone, the girl witnessed the man exit and stand near his car. And even after this man was chased by the girl's father, he continued to park in the same place near her home. These facts are sufficient to elicit fear that is objectively reasonable.
Third, Ainslie contends that the evidence does not establish that he knew or reasonably should have known that his conduct was frightening to J.P.[9] Once again, the evidence shows otherwise. Ainslie acknowledged that he was informed by an officer that his getting out of his car and looking at three girls had caused alarm. The warning itself may not have placed Ainslie on actual notice that J.P. herself did not want to be followed. But that evidence, in conjunction with Ainslie's knowledge that Proffitt followed him into a cul-de-sac and yelled at him to stop his behavior, was sufficient to support a finding that Ainslie reasonably should have known his conduct created fear in J.P.
*322 The evidence was sufficient for the trier of fact to find each of the elements of stalking under RCW 9A.46.110(1) established.
B. Vagueness
Ainslie contends that the stalking statute is unconstitutionally vague as applied to him because persons of ordinary intelligence would not understand that "following" includes regularly parking a car at a particular location and sitting in it, without intending to scare anyone.
If a statute does not involve First Amendment rights, the court considers only whether the statute is sufficiently definite as applied to the defendant's particular conduct.[10] "A statute is void for vagueness if it is framed in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its applicability."[11]
Here, given the evidence previously described, a person of ordinary understanding would be capable of determining that Ainslie's conduct constituted repeated "following" within the definition in the statute.[12] The statute is therefore not unconstitutionally vague as applied to Ainslie.
Affirmed.
BECKER, J., and COX, J., concur.
NOTES
[1] RCW 9A.46.110 provides:

(1) A person commits the crime of stalking if, without lawful authority and under circumstances not amounting to a felony attempt of another crime:
(a) He or she intentionally and repeatedly harasses or repeatedly follows another person; and
(b) The person being harassed or followed is placed in fear that the stalker intends to injure the person, another person, or property of the person or of another person. The feeling of fear must be one that a reasonable person in the same situation would experience under all the circumstances; and
(c) The stalker either:
(i) Intends to frighten, intimidate, or harass the person; or
(ii) Knows or reasonably should know that the person is afraid, intimidated, or harassed even if the stalker did not intend to place the person in fear or intimidate or harass the person. (2)(a) It is not a defense to the crime of stalking under subsection (1)(c)(i) of this section that the stalker was not given actual notice that the person did not want the stalker to contact or follow the person; and
(b) It is not a defense to the crime of stalking under subsection (1)(c)(ii) of this section that the stalker did not intend to frighten, intimidate, or harass the person.
. . . .
(4) Attempts to contact or follow the person after being given actual notice that the person does not want to be contacted or followed constitutes prima facie evidence that the stalker intends to intimidate or harass the person....
. . . .
(6) As used in this section:
(a) "Follows" means deliberately maintaining visual or physical proximity to a specific person over a period of time. A finding that the alleged stalker repeatedly and deliberately appears at the person's home, school, place of employment, business, or any other location to maintain visual or physical proximity to the person is sufficient to find that the alleged stalker follows the person. It is not necessary to establish that the alleged stalker follows the person while in transit from one location to another.
(b) "Harasses" means unlawful harassment as defined in RCW 10.14.020.
. . . .
(d) "Repeatedly" means on two or more separate occasions.
"Unlawful harassment" is defined as "a knowing and wilful course of conduct directed at a specific person which seriously alarms, annoys, harasses, or is detrimental to such person, and which serves no legitimate or lawful purpose." RCW 10.14.020.
RCW 9A.46.110 was amended in 1999. The amended language does not affect the outcome of this opinion. 1999 Wash. Laws, ch. 27, § 3.
[2] State v. Bencivenga, 137 Wash.2d 703, 706, 974 P.2d 832 (1999).
[3] State v. Joy, 121 Wash.2d 333, 338-39, 851 P.2d 654 (1993).
[4] Bencivenga, 137 Wash.2d at 711, 974 P.2d 832.
[5] State v. Walton, 64 Wash.App. 410, 415-16, 824 P.2d 533 (1992).
[6] 135 Wash.2d 369, 957 P.2d 741 (1998).
[7] Ainslie contends that Proffitt's testimony that he was in the Proffitt's yard was impeached by Officer Leppich's testimony that, according to his police report, Proffitt had knowledge that Ainslie was in the yard, but never actually saw him. Credibility decisions are for the finder of fact and are not subject to review. State v. Camarillo, 115 Wash.2d 60, 71, 794 P.2d 850 (1990).
[8] See RCW 9A.46.110(1)(b).
[9] See RCW 9A.46.110(1)(c)(ii).
[10] City of Seattle v. Montana, 129 Wash.2d 583, 596-97, 919 P.2d 1218 (1996).
[11] Lee, 135 Wash.2d at 393, 957 P.2d 741 (citation omitted).
[12] See RCW 9A.46.110(6)(a).