[No. 51259-5-I. Division One. November 17, 2003.]

THE STATE OF WASHINGTON, *Respondent*, v. ISAIAS ROBERT NIETO, *Appellant*.

158

*Isaias Nieto*, pro se.

*Richard A. Hansen* (of *Allen, Hansen & Maybrown, P.S.*), for appellant.

*David S. McEachran, Prosecuting Attorney*, and *Eric J. Richey* and *Kimberly A. Thulin, Deputies*, for respondent.

AGID, J. — Isaias Robert Nieto appeals his conviction of third degree rape of a child. He claims that the trial court erred by admitting the victim's written statement as substantive evidence and finding that Nieto had confessed. We hold the victim's statement lacked sufficient indicia of reliability to render it admissible as substantive evidence. Because insufficient evidence remains to convict Nieto, we reverse the conviction.

## FACTS

From June to December 2000, Nieto and WB worked together at a pizza restaurant in Blaine. At the time, WB was 14 years old and Nieto was 28 years old. WB stopped working at the restaurant in December 2000, but she continued to visit Nieto there, and the two had regular phone and e-mail contact. In January 2001, shortly after WB turned 15 years old, Nieto told WB that he had romantic feelings for her, and WB responded in kind. Nieto left Whatcom County one month later, but they continued to stay in touch, and Nieto occasionally visited WB.

WB's parents were concerned about this relationship, so they contacted Officer John Landis of the Blaine Police

Department. Officer Landis was trained in child abuse investigation and was WB's neighbor and a family acquaintance. In February 2002, one month after WB's 16th birthday, Officer Landis interviewed WB at the police station. After the interview, WB handwrote and signed a seven page statement. She described her relationship with Nieto and admitted there were at least three occasions on which she and Nieto had consensual sexual intercourse before her 16th birthday.

Nieto was charged with one count of third degree rape of a child. At his bench trial, WB recanted her written statement. She testified that she did not have intercourse with Nieto until after she turned 16 and that portions of her statement were lies. WB said she lied in her statement because Officer Landis told her that Nieto was cheating on her and because Landis led her to believe Nieto would be sentenced to a longer jail term if she did not write a statement. She testified that she later felt guilty for writing the inaccurate statement.

Officer Landis testified that he said nothing to WB about possible prison terms for Nieto. But he did admit to telling WB he had witnesses who believed Nieto was dating another woman. Officer Landis also testified that he read WB's statement to Nieto, Nieto admitted that the statement was true, and he commented that he was surprised by its detail. In contrast, Nieto testified that he did not hear the entire statement, did not admit that WB's statement was true, and had intercourse with WB only after she turned 16.

The trial court determined that WB's written statement was admissible as substantive evidence under ER 801-(d)(1)(i). Relying on the statement, the court found Nieto guilty of third degree rape of a child. The court sentenced Nieto to a 13 month term of imprisonment and a 12 to 14 month term of community custody.

## DISCUSSION

### I. Admissibility of WB's Statement

Under ER 801(d)(1)(i), a prior inconsistent statement is not hearsay and may be admitted as substantive evidence if: (1) the declarant testified at trial and was subject to cross-examination, (2) the statement was inconsistent with the declarant's testimony, (3) it was given under oath subject to penalty of perjury, and (4) it was provided at "a trial, hearing, or other proceeding, or in a deposition."[1] The proponent of the statement's admissibility bears the burden of proving each of these elements.[2] The trial court's decision to admit evidence is reviewed for an abuse of discretion.[3] If the trial court based its evidentiary ruling on an incomplete legal analysis or a misapprehension of legal issues, the ruling may be an abuse of discretion.[4]

### A. Oath Requirement

Nieto first argues that WB's statement was not given under oath as required by ER 801(d)(1)(i). An unsworn written statement will satisfy the oath requirement if it is signed and contains language such as, "I certify (or declare) under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct . . . ."[5] In this case, WB wrote her statement on a preprinted police form which included the following language on each page:

> I have read each page of this statement consisting of ___ page(s). Each page bears my signature, and all corrections, if any, bear my initials. I certify (or declare) under penalty of

---

[1] ER 801(d)(1)(i).

[2] *United States v. Day*, 789 F.2d 1217, 1221 (6th Cir. 1986) (citing *United States v. Felix-Jerez*, 667 F.2d 1297, 1299 (9th Cir. 1982)).

[3] *State v. Castellanos*, 132 Wn.2d 94, 97, 935 P.2d 1353 (1997).

[4] *State v. Derouin*, 116 Wn. App. 38, 42, 64 P.3d 35 (2003) (citing *City of Kennewick v. Day*, 142 Wn.2d 1, 5, 11 P.3d 304 (2000)).

[5] RCW 9A.72.085. *See also State v. Nelson*, 74 Wn. App. 380, 389-90, 874 P.2d 170, *review denied*, 125 Wn.2d 1002 (1994); *State v. Sua*, 115 Wn. App. 29, 47, 60 P.3d 1234 (2003).

perjury under the laws of the State of Washington that the foregoing is true and correct.

The language was located at the bottom of the form's first page and at the top of each of the remaining pages.

This boilerplate language is ambiguous because it is unclear what the term "foregoing" refers to. The State asserts that it refers to the witness' written statement, but this is problematic because the language appears at the top of pages two through seven so that "foregoing" could refer only to the witness statement on the preceding pages. If this were the case, there would be no affirmation of the last page's contents. Alternatively, "foregoing" could refer to the first two sentences in the boilerplate language. Given the way the affirmation is written, the latter is the more likely interpretation. Because of this ambiguity, we cannot conclude that the statement satisfied the oath requirement. The nature and placement of the boilerplate language does little to aver that the statement's content is true.

## B. "Other Proceeding" Requirement

 Nieto next argues that Officer Landis' interview with WB was not an "other proceeding" as the evidence rule requires. To determine whether the interview was an "other proceeding," the court must analyze the facts of the case and the purposes of the hearsay rule.[6] The rule is designed to remove doubt about the circumstances under which the prior statement was made and provide minimal guaranties of truthfulness.[7] "In determining whether evidence should be admitted, reliability is the key."[8]

In assessing the reliability of a prior inconsistent statement, courts consider whether (1) the witness made the statement voluntarily; (2) there were minimal guaranties of truthfulness; (3) the statement was given following one of the legally permissible methods for determining whether

---

[6] *State v. Smith*, 97 Wn.2d 856, 861, 651 P.2d 207 (1982).

[7] *Id.* at 862 (quoting 4 DAVID W. LOUISELL & CHRISTOPHER R. MUELLER, FEDERAL EVIDENCE § 419 at 169-71 (1980)).

[8] *Smith*, 97 Wn.2d at 861.

there was probable cause; and (4) the witness was later subject to cross-examination.[9] Nieto argues that WB's statement was not voluntary, nor were there minimal guaranties of truthfulness.

The State fails to demonstrate that WB's statement contained minimal guaranties of truthfulness, that is, " 'an oath and the circumstance of a formalized proceeding.' "[10] As previously discussed, the oath requirement was not satisfied in this case. And, unlike the police interviews in *State v. Smith*[11] and *State v. Nelson*,[12] no notary was present here, nor were any other formal procedures involved.[13] WB testified that she did not read the "penalty of perjury" language, and she said the language had no meaning to her. Officer Landis admitted he did not remember reading the language to WB. The record contains no indication that anyone told WB that her statement was given under penalty of perjury.

Like WB, the witness in *Nelson* testified that she did not realize her statement was being taken under penalty of perjury.[14] The witness was equivocal about whether she read the oath language, and she testified that the notary did not read the oath to her.[15] But the State in *Nelson* presented evidence that the prosecutor reviewed the statement with the witness and explained the importance of the affidavit, and the notary testified that it is her standard practice to ask the witness whether she has read the affidavit and execute the affidavit only if the witness

---

[9] *Nelson*, 74 Wn. App. at 387.

[10] *Smith*, 97 Wn.2d at 862 (quoting 4 LOUISELL & MUELLER, *supra*).

[11] 97 Wn.2d 856, 651 P.2d 207 (1982).

[12] 74 Wn. App. 380, 874 P.2d 170, *review denied*, 125 Wn.2d 1002 (1994).

[13] *See Smith*, 97 Wn.2d at 857; *Nelson*, 74 Wn. App. at 383.

[14] 74 Wn. App. at 389-90.

[15] *Id.* at 390.

answers affirmatively.[16] Based on this evidence, the court found that minimal guaranties of truthfulness existed.[17]

There is no similar evidence in this case. The State argues only that WB is very bright and appropriately filled in the numerous required blanks on the statement form, thus allowing the court to reasonably infer that she knowingly signed under the "penalty of perjury" language. This is insufficient to meet the State's burden. WB's statement lacked minimal guaranties of truthfulness and thus was not sufficiently reliable. "[R]eliability is the key" in determining whether a prior inconsistent statement should be admitted.[18] Here, the trial court erred in admitting WB's statement as substantive evidence.

## II. Sufficiency of the Evidence

The trial court heard conflicting testimony about whether Nieto admitted having intercourse with WB before her 16th birthday. Officer Landis testified that he read WB's statement to Nieto with some interruptions, that Nieto never asked to see a copy of the statement, and that he agreed with the statement and commented that he was surprised by the detail. In contrast, Nieto testified that he asked to see a copy of the statement but Officer Landis refused, Officer Landis did not read the whole statement but rather appeared to skip parts, and he never told the officer that he agreed with the statement. In its findings of fact, the trial court found that Officer Landis read WB's statement to Nieto and that Nieto admitted having intercourse with WB before her 16th birthday. Nieto now argues that insufficient evidence existed to support these findings.

In reviewing a sufficiency of the evidence challenge, the court must determine whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have convicted the defendant

---

[16] *Id.*

[17] *Id.*

[18] *Smith*, 97 Wn.2d at 861.

beyond a reasonable doubt.[19] A reviewing court defers to the trier of fact on issues of the persuasiveness of the evidence, witness credibility, and conflicting testimony.[20] In this case, the trial court faced conflicting testimony and found Nieto to be less credible. It was within the court's discretion to do so.

While the trial court did not err in finding that Nieto confessed, the confession is inadmissible under the corpus delicti rule. Under this rule, the court may not consider Nieto's alleged confession unless the State has established, through independent proof, that Nieto had intercourse with WB before her 16th birthday.[21] Without WB's statement, the State has no evidence to establish the corpus delicti of third degree child rape. Therefore, Nieto's confession was inadmissible.

Without WB's statement and Nieto's confession, a trier of fact would have no basis on which to convict Nieto. Accordingly, we vacate the conviction, reverse the judgment, and remand to correct the record accordingly.

We reverse.

BECKER, C.J., and GROSSE, J., concur.

---

[19] *State v. Ainslie*, 103 Wn. App. 1, 5-6, 11 P.3d 318 (2000) (citing *State v. Bencivenga*, 137 Wn.2d 703, 706, 974 P.2d 832 (1999)).

[20] *Ainslie*, 103 Wn. App. at 6 (citing *State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533, *review denied*, 119 Wn.2d 1011 (1992)).

[21] *State v. Ray*, 130 Wn.2d 673, 679, 926 P.2d 904 (1996).