FILED
COURT OF APPEALS
DIVISION II

2015 MAR 10 AM 8: 34

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44974-9-II |
| Respondent, | |
| v. | |
| MICHAEL E. MCCOMAS, JR., | PUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Michael E. McComas, Jr. appeals his conviction of domestic violence assault in the fourth degree, arguing that the trial court erred by admitting the victim's recorded statement concerning the assault as substantive evidence under ER 801(d)(1)(i). Because the victim did not make her statement under oath, the court erred by admitting that statement as substantive evidence. However, we hold the error was harmless and we affirm McComas's conviction.

## FACTS

### I.    SUBSTANTIVE FACTS

On November 15, 2012, Philana McComas, while upset and crying, went to the Mason County Sheriff's Office and reported that her husband Michael choked and hit her.[1] Deputy Robert Noyes observed visible signs of injury on Philana including abrasions on her neck, scratches on her chest, and a red area on her lower back.

Later that afternoon, Deputy Justin Cotte went to the McComases' home and took an audio-recorded statement from Philana. She stated that Michael became angry that morning and screamed vulgarities at her. When she told him to calm down, he threw some dishes against the

---

[1] For clarity we refer to the McComases by their first names. We intend no disrespect.

wall. Philana added that when she tried to grab her cell phone and leave, Michael attacked her, took her to the ground, and choked her. She said that she blacked out momentarily. She then ran out of the house. Because the police station was closed for lunch, Philana went to lunch with a friend before going back to the police station.

At the end of her statement, Deputy Cotte asked Philana if she declared, under penalty of perjury, that "the foregoing is true and correct." Clerk's Papers (CP) at 66. Philana replied yes. The State subsequently charged Michael with domestic violence assault in the second degree by strangulation.

In January 2013, Philana recanted her November statement. During a second interview with the police, she denied being strangled or choked. Philana said that she fell to the floor while trying to take an iPod from Michael. She added that her injuries resulted from Michael landing on top of her and their dog scratching her. Philana declined to allow her recantation to be recorded.

II.    PRETRIAL MOTION TO EXCLUDE STATEMENT

Before trial, the defense moved to exclude Philana's recorded statement as substantive evidence. At the hearing on that motion, Philana testified that she remembered giving a statement on November 15 but that she did not remember it being recorded. She also did not remember the deputy advising her that her statement was made under penalty of perjury. She added that she did not understand the word "perjury" until its meaning was explained two days before trial. Philana further testified that mental health issues contributed to her inability to fully understand the nature of her recorded statement.

The trial court found this testimony not credible. The trial court denied the defense motion. It entered written findings of fact and conclusions of law that admitted Philana's prior recorded

2

statement as substantive evidence under ER 801(d)(1)(i) and *State v. Smith*, 97 Wn.2d 856, 857, 651 P.2d 207 (1982).

III.   TRIAL PROCEEDINGS

At trial, Philana testified that she awoke to Michael making noise. When she told him to settle down, he threw some dishes. When asked whether Michael had choked her, she replied, "There was dogs around and we were down on the ground." 2 Report of Proceedings (RP) at 71. She did not think that Michael choked her: "I think the dog had stepped on me or something like that." 2 RP at 71. She said that she blacked out because she was upset, and not because Michael choked her. She also acknowledged giving three statements about the episode.

Deputy Noyes testified about the injuries he saw on Philana's neck, chest, and back when she came to the police station. The trial court admitted into evidence photographs of Philana's neck and chest injuries. Noyes also testified, over a defense objection, that Philana identified Michael as her assailant. The trial court admitted this testimony as impeachment evidence.

Deputy Cotte testified that he saw damage to the house consistent with Michael throwing plates against the wall. The trial court admitted photographic evidence of this damage. Cotte also testified about the recorded statement he took from Philana. The trial court admitted the CD (compact disc) of the statement into evidence and allowed the jury to review the transcribed statement as it listened to the recording.

Michael testified on his own behalf and stated that on the morning of the incident, Philana confronted him about making too much noise. He admitted that they argued and that he damaged the wall by throwing two cup holders against it. He claimed that Philana hit him as well as herself, and that he pulled her to the ground and held her down in self-defense and to protect her. "[Y]ou've

got to hold her down with the shoulders and hold her arms down to the ground with your knees so she doesn't punch herself in the face." 2 RP at 124-25.

Both parties proposed self-defense jury instructions. The defense proposed a lesser included instruction on assault in the fourth degree. The trial court instructed the jury accordingly.

During closing argument, defense counsel admitted that Michael assaulted Philana but argued that he did so in self-defense. Counsel concluded that the proper verdict was "not guilty all the way around based on the self-defense defense that you were instructed on. And if you do not accept that, then the proper verdict is fourth degree assault with the family relation part of it." 2 RP at 193.

The jury returned a verdict of not guilty on the charge of assault in the second degree by strangulation, but it found Michael guilty of assault in the fourth degree. The jury also answered "yes" to the special verdict asking whether Michael and Philana were family or household members. CP at 16. The trial court sentenced Michael to 364 days in jail with 304 days suspended.

Michael appeals his conviction. He argues that the trial court erred by admitting Philana's prior recorded statement as substantive evidence under ER 801(d)(1)(i).

## ANALYSIS

### I. STANDARD OF REVIEW

We review a trial court's decision to admit evidence for abuse of discretion. *State v. Nieto*, 119 Wn. App. 157, 161, 79 P.3d 473 (2003). If the trial court based its evidentiary ruling on an incomplete legal analysis or a misapprehension of legal issues, the ruling may be an abuse of discretion. *City of Kennewick v. Day*, 142 Wn.2d 1, 15, 11 P.3d 304 (2000); *Nieto*, 119 Wn. App. at 161.

II.    ER 801—PRIOR INCONSISTENT STATEMENTS

The rule against hearsay generally excludes out-of-court statements that are offered in court for the truth of the matter asserted. ER 801(a)-(c); ER 802. A witness's prior inconsistent statement is not hearsay and may be admitted as substantive evidence if the declarant testified at trial, was subject to cross-examination, and the declarant gave the statement under oath subject to penalty of perjury "at a trial, hearing, or other proceeding, or in a deposition." ER 801(d)(1)(i); *Nieto*, 119 Wn. App. at 161.

Michael argues that the trial court improperly admitted Philana's recorded statement under ER 801(d)(1)(i) because the police interview did not constitute a "proceeding" under the rule and because Philana did not make her statement under oath.

A.    OTHER PROCEEDING UNDER ER 801

In *Smith*, the Washington Supreme Court considered the admissibility of an assault victim's sworn written statement to investigating police officers. 97 Wn.2d at 857. The victim's complaint in *Smith* identified the defendant as her assailant. 97 Wn.2d at 857. When the victim named another man as her assailant at trial, the trial court allowed her prior complaint to be used as substantive evidence under ER 801(d)(1)(i). *Smith*, 97 Wn.2d at 857.

In reviewing the trial court's ruling, the Supreme Court declined to adopt a bright line rule as to whether a sworn statement given during a police interrogation would be admissible as a statement provided during a "proceeding" under ER 801(d)(1)(i). *Smith*, 97 Wn.2d at 861. "We do not interpret the rule to always exclude or always admit such affidavits. The purposes of the rule and the facts of each case must be analyzed. In determining whether evidence should be admitted, reliability is the key." *Smith*, 97 Wn.2d at 861 (footnote omitted).

The *Smith* court considered a variety of factors in assessing such prior inconsistent statements: (1) whether the witness voluntarily made the statement, (2) whether there were minimal guarantees of truthfulness, (3) whether the statement was taken as standard procedure in one of the four legally permissible methods of determining the existence of probable cause, and (4) whether the witness was subject to cross-examination when giving the subsequent inconsistent statement. *State v. Nelson*, 74 Wn. App. 380, 387, 874 P.2d 170 (1994) (citing *Smith*, 97 Wn.2d at 861-63).

Here, the trial court applied these factors and concluded that Philana's prior recorded statement was reliable and thus admissible. Michael contends that the trial court abused its discretion by relying on *Smith* and urges us to abandon the *Smith* reliability test in favor of a bright-line rule stating that police interviews do not qualify as a "proceeding" under ER 801(d)(1)(i).

In support of his argument, Michael cites the legislative history of Fed. R. Evid. 801(d)(1)(A). ER 801(d)(1)(i) was "taken verbatim" from this federal rule. *Smith*, 97 Wn.2d at 859. The original version of the federal rule would have allowed all prior inconsistent statements to be used as substantive evidence. *United States v. Castro-Ayon*, 537 F.2d 1055, 1057 (9th Cir. 1976). A subsequent version narrowed the rule to allow substantive admissibility only if the prior inconsistent statement was given under oath, subject to prosecution for perjury, subject to cross-examination, and given in a trial, hearing, or deposition. *Castro-Ayon*, 537 F.2d at 1057; *State v. Sua*, 115 Wn. App. 29, 44, 60 P.3d 1234 (2003). The final compromise version required the prior statement to be given under oath, subject to prosecution for perjury, and given in a "trial, hearing, or other proceeding." *Castro-Ayon*, 537 F.2d at 1057; *Sua*, 115 Wn. App. at 45-46. This final version abandoned the cross-examination requirement to permit the inclusion of grand jury

proceedings within the category of "other proceeding." *Castro-Ayon*, 537 F.2d at 1057; *Smith*, 97 Wn.2d at 860.

In *Castro-Ayon*, the Ninth Circuit extended the "other proceeding" category further and determined that a tape-recorded statement made under oath and taken in an immigration investigation was admissible under Fed. R. Evid. 801(d)(1). 537 F.2d at 1057-58; *Smith*, 97 Wn.2d at 860. The court observed that the choice of the open-ended term "other proceeding" showed Congress's intent to extend the rule beyond grand jury proceedings. *Castro-Ayon*, 537 F.2d at 1058. The court also observed that the immigration proceeding at issue bore similarities to a grand jury proceeding: both were investigatory, ex parte, inquisitive, sworn, basically prosecutorial, held before an officer other than the arresting officer, recorded, and held in circumstances of some legal formality. *Castro-Ayon*, 537 F.2d at 1058. The Ninth Circuit limited its holding, stating that not every sworn statement given during a police-station interrogation would be admissible. *Castro-Ayon*, 537 F.2d at 1058.

As stated, the *Smith* court determined that reliability was the key to admitting a prior inconsistent statement made during a police interview. 97 Wn.2d at 861. Michael now argues that *Smith* expanded the "other proceeding" category beyond what Congress intended, and he supports his claim of error by citing *Delgado-Santos v. State*, 471 So. 2d 74 (Fla. Dist. Ct. App. 1985).

In *Delgado-Santos*, the court considered the admissibility of a prior inconsistent statement made by a juvenile during police questioning. 471 So. 2d at 75. The court rejected the argument that police investigatory activity constitutes a "proceeding" under the Florida statute based on Fed. R. Evid. 801(d)(1)(A). *Delgado-Santos*, 471 So. 2d at 75 (citing Fla. Stat. Ann. § 90.801(2)(a)). The court observed that the word "proceeding" implied "a degree of formality, convention,

structure, regularity and replicability of the process in question" that police questioning does not include. *Delgado-Santos*, 471 So. 2d at 77.

The *Delgado-Santos* court expressly rejected the *Smith* court's reliance on reliability, finding that it had no basis in the statute:

> While the legislature and Congress may have been ultimately concerned with the "reliability" of a particular statement, they sought to vindicate that concern only by establishing given and objective criteria as to the circumstances, including the kind of forum, under which it was given. And it is for the legislature, not the courts, to determine not only the policy to be promoted, but the means by which that end is to be achieved.

471 So. 2d at 79. The court concluded that the *Smith* reliability test violated this basic principle by suggesting, without statutory authority, that the existence of a "proceeding" can depend on what is said before it. *Delgado-Santos*, 471 So. 2d at 79.

Michael argues that the Florida court's concerns about the *Smith* test are confirmed by the United States Supreme Court's concerns about a reliability standard for admitting hearsay, as expressed in *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). In *Crawford*, the Court concluded that confrontation clause protections should not be left to "amorphous notions of 'reliability.'" 541 U.S. at 61. The Court abandoned the *Roberts* test, which allowed a jury to hear hearsay evidence based on a judicial determination of reliability, in favor of a new rule stating that the admission of testimonial hearsay evidence at trial violates the Sixth Amendment when the witness is unavailable and cannot be cross-examined by the defendant. *Crawford*, 541 U.S. at 62, 68, *abrogating Ohio v. Roberts*, 448 U.S. 56, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980).

There are fundamental problems with Michael's challenge to the *Smith* decision. First, we are bound to apply Washington law as interpreted by the Washington Supreme Court. *State v. Gore*, 101 Wn.2d 481, 487, 681 P.2d 227 (1984). We cannot abandon the reliability test set forth

8

in *Smith* in favor of a bright-line rule holding that police questioning does not qualify as a "proceeding" under ER 801(d)(1)(i). Second, there is no confrontation clause problem when the witness testifies at trial, concedes making the prior statement, and is subject to unrestricted cross-examination. *United States v. Owens*, 484 U.S. 554, 560, 108 S. Ct. 838, 98 L. Ed. 2d 951 (1988); *State v. Thach*, 126 Wn. App. 297, 309, 106 P.3d 782 (2005) (citing *Crawford*, 541 U.S. at 59 n.9). *Crawford* has no bearing on the admissibility of prior inconsistent statements under ER 801(d)(1)(i) and does not compel abandonment of the *Smith* test. *Thach*, 126 Wn. App. at 309.

Some states have resolved the issue presented in this case by expressly including recorded statements within the categories of prior inconsistent statements that are admissible as substantive evidence. *See McManamon v. Washko*, 906 A.2d 1259, 1267 (Pa. Super. 2006); *State v. Fields*, 120 Haw. App. 73, 89 n.3, 201 P.3d 586 (2005), *affirmed*, 108 Haw. 503, 168 P.3d 955 (2007).[2] Until ER 801(d)(1)(i) is amended accordingly, or until our Supreme Court overrules *Smith*, Washington courts are bound by the reliability test set forth in *Smith* in determining the admissibility of any prior inconsistent statement made during a police interview.

### B.   OATH REQUIREMENT

Michael argues that even if *Smith* remains good law, the court erred by admitting Philana's statement because it was not made under oath, as ER 801(d)(1)(i) requires. In a related argument, Michael contends that the trial court erred in concluding that Philana's prior statement met the minimal guarantees of truthfulness that *Smith* requires. Michael did not raise the oath requirement as a separate issue below, but his argument that Philana's prior statement did not satisfy the *Smith*

---

[2] Pa. R. Evid. 803.1(1)(C) excludes from the hearsay definition a witness's prior inconsistent statement that is "a verbatim contemporaneous electronic, audiotaped, or videotaped recording of an oral statement." Haw. R. Evid. 802.1(1)(C) excludes prior inconsistent statements that are "[r]ecorded in substantially verbatim fashion by stenographic, mechanical, electrical, or other means contemporaneously with the making of the statement."

test preserves this issue on appeal. *See Nieto*, 119 Wn. App. at 163 (minimal guarantees of truthfulness standard is satisfied by an oath and a formalized proceeding).

We addressed the oath requirement in *Sua*, where each alleged victim provided a written statement and signed a paragraph stating, "The above is a true and correct statement to the best of my knowledge. No threats or promises have been made to me nor any duress used against me." 115 Wn. App. at 32. We compared these facts with *Smith*, where the declarant took an oath from a notary public, and with *Nelson*, where the declarant complied with RCW 9A.72.085. *Sua*, 115 Wn. App. at 48. In contrast, neither declarant in *Sua* took an oath, complied with RCW 9A.72.085, or in any other way gave her statement under oath subject to penalty of perjury. 115 Wn. App. at 48. As a consequence, we held that the trial court erred by admitting the victims' statements as substantive evidence under ER 801(d)(1)(i). *Sua*, 115 Wn. App. at 49.

RCW 9A.72.085(1) sets forth the circumstances in which an unsworn statement may be treated as a sworn statement:[3]

> Whenever, under any law of this state or under any rule, order, or requirement made under the law of this state, any matter in an official proceeding is required or permitted to be supported, evidenced, established, or proved by a person's sworn written statement, declaration, verification, certificate, oath, or affidavit, the matter may with like force and effect be supported, evidenced, established, or proved in the official proceeding by an unsworn written statement, declaration, verification, or certificate, which:
>
> (a) Recites that it is certified or declared by the person to be true under penalty of perjury;
> (b) Is subscribed by the person;
> (c) States the date and place of its execution; and
> (d) States that it is so certified or declared under the laws of the state of Washington.

---

[3] GR 13 also allows for the use of unsworn statements.

The statute thus permits verification of unsworn written statements by signing and certifying, under penalty of perjury, that the information is true and providing the time and place of signing. *Gates v. Port of Kalama*, 152 Wn. App. 82, 88, 215 P.3d 983 (2009).

As we observed in *Sua*, the sworn written statement in *Nelson* satisfied each requirement of RCW 9A.72.085. 115 Wn. App. at 47-48 (citing *Nelson*, 74 Wn. App. at 390). Because the evidence supported a finding that the declarant understood that her sworn statement was made under penalty of perjury, her signature on that statement satisfied the required minimal guarantees of truthfulness. *Nelson*, 74 Wn. App. at 390; *see also Thach*, 126 Wn. App. at 308 (declarant's testimony that she signed her statement under penalty of perjury, and officer's witnessing of her signature, supported a finding that her statement carried minimal guarantees of truthfulness).

Philana testified that she did not understand the meaning of the word "perjury" until shortly before trial, but the trial court found this testimony neither credible nor truthful. On appeal, Michael challenges these findings by citing Philana's testimony as well as the lack of evidence showing that anyone explained the meaning of the word "perjury" to her.

It is well settled that credibility determinations are for the trier of fact and are not subject to review. *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004). But, even if we defer to the trial court's findings regarding Philana's lack of credibility, her statement did not qualify as a sworn statement under RCW 9A.72.085. The police transcribed her oral statement, but she did not review, sign, and date the transcription. *See State v. Johnson*, 40 Wn. App. 371, 378, 699 P.2d 221 (1985) (statements to police that were oral or unsigned were inadmissible under ER 801(d)(1)). Consequently, Philana's prior statement did not satisfy the oath requirement in ER 801(d)(1)(i) or meet the minimal guarantees of truthfulness that *Smith* requires. The trial court erred by admitting the statement as substantive evidence.

11

III.    HARMLESS ERROR

The State argues that any failure to satisfy the oath requirement in ER 801(d)(1)(i) or one of the *Smith* factors was harmless error. We agree.

A reviewing court will not reverse due to an error in admitting evidence where the error does not prejudice the defendant. *Thomas*, 150 Wn.2d at 871. Where the error is from the violation of an evidentiary rule rather than a constitutional mandate, courts do not apply the more stringent "harmless error beyond a reasonable doubt" standard. *Thomas*, 150 Wn.2d at 871. Rather, evidentiary error is not prejudicial unless, within reasonable probabilities, the trial's outcome would have differed had the error not occurred. *Thomas*, 150 Wn.2d at 871.

The evidence of Michael's guilt is overwhelming. The record shows that Philana went to the police station in a state of distress. She had visible injuries consistent with an assault. She told Deputy Noyes that Michael had inflicted those injuries.[4] Although Michael denied choking Philana, he admitted arguing with her, throwing items against the wall, and assaulting her.

The issues before the jury were whether Michael acted in self-defense or whether he committed assault in the second degree by strangulation or assault in the fourth degree. It does not appear reasonably probable that the jury would have acquitted Michael of assault in the fourth degree had the trial court excluded Philana's prior recorded statement as substantive evidence.

---

[4] The trial court admitted this testimony for impeachment purposes but did not offer the jury a limiting instruction. In the absence of a limiting instruction, the jury could consider Deputy Noyes's testimony about Philana's statements as substantive evidence. *See State v. Myers*, 133 Wn.2d 26, 36, 941 P.2d 1102 (1997) (absent request for limiting instruction, evidence admitted as relevant for one purpose is deemed relevant for other purposes).

We hold that the trial court's error was harmless based on the additional evidence supporting Michael's conviction of assault in the fourth degree. We affirm the conviction.

                                                Melnick, J.

We concur:

Worswick, J.

Bjorgen, A.C.J.