11 P.3d 883 (2000)
103 Wash.App. 252
Diane T. BLOMSTER, Appellant,
v.
NORDSTROM, INC., a Washington corporation, Respondent.
No. 45836-1-I.
Court of Appeals of Washington, Division 1.
November 6, 2000.
*884 Bertha Baranko Fitzer, University Place, for Appellant.
D. Michael Reilly, Seattle, for Respondent.
GROSSE, J.
Washington's Family Leave Act, RCW 49.78, does not permit a private right of action by an employee for an alleged breach of its provisions. Nevertheless, an employee can make a prima facie case for constructive discharge where the employer's policy, consistent with the Family Leave Act, guarantees the right of the employee to return to the same or equivalent position after taking family leave, and the disputed facts could support an inference that the employer failed to honor that promise. The employee's claim for constructive discharge should not have been dismissed on summary judgment. The decision of the trial court is affirmed in part and reversed in part.

FACTS
Diane T. Blomster, now Blomster-Horning (but hereinafter referred to as Blomster), began working at Nordstrom, Inc. (Nordstrom) in 1978 in the accounting department. She was promoted several times and obtained many management benefits and perks. In the early 1990s, Nordstrom's merchandise tracking system was automated. Blomster's job was to create an automated system for receiving and analyzing sales data, rather than the old manual checking of tickets to track merchandise. The automated system came on line in 1994, shortly before Blomster left for medical and family leaves. Blomster was pregnant and had medical difficulties *885 with her pregnancy before the actual birth of her child.
Blomster requested leave and filled out the proper forms. At the top of the Nordstrom leave form is a statement which includes:
A Leave of Absence bridges the gap in employment history and it allows you to return to the same or an equivalent position without affecting your hire date.
In addition, the Nordstom employee handbook provided under its leave of absence guidelines:
You are guaranteed to be restored to the same or equivalent position upon your return to work, ....
"Equivalent position" is defined by Nordstrom's employee handbook:
An equivalent position is a position that provides you with the same pay, benefits and working conditions. The position must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibilities, and authority.
At the end of an approved family leave, Blomster had the right to be reinstated under the following terms:
Upon return from an approved family leave of three (3) months or less, you are entitled to return to the position you held (if available), before your leave began, unless the position has been eliminated during a work force reduction. If the former position is no longer available, you may return to an equivalent position.

Before Blomster returned from her approved combined medical and family leaves, she was told that her position no longer existed and attempts would be made to find her a suitable position. When she returned, after five and one-half months of combined leave, she was given a different job with a substantially lower salary and less responsibility. Her salary was decreased 50 percent, her management position was taken away, and her executive discounts were removed, among other things. She applied for better paying and management positions within the company but her in-company search was not successful. She eventually accepted a position with another company which paid more than she was making at the time she left Nordstrom, but considerably less than she had been paid before her medical/family leave.
Blomster sued Nordstrom seeking damages on several theories, including violation of Washington's Family Leave Act, breach of implied contract, and constructive discharge. Nordstrom moved for summary judgment and sought the excisement of certain portions of Blomster's declaration in reply and rebuttal to its motion, and also striking portions of the declaration of Blomster's personnel expert who had previously testified in several federal cases against Nordstrom. The trial court granted Nordstrom's motion in part. It awarded summary judgment, dismissing Blomster's claims based on the Family Leave Act and the constructive discharge theories. The court also struck portions of both Blomster's declaration and that of her expert, Wayne F. Cascio, Ph.D. Blomster then took a voluntary nonsuit on the remaining theories so she could appeal to determine her rights. She appeals the decision of the trial court.

DISCUSSION
Family Leave Act
The Family Leave Act, RCW 49.78, entitles employees to 12 weeks of family leave, which may be unpaid, during any 24-month period. This is in addition to any sick or disability leave to which the employee may be entitled for pregnancy and childbirth.[1] The act also allows an employee to return to the same position upon return from leave unless, among other things, the employee's position is eliminated by bona fide restructuring or a reduction in force.[2] Under the act, any employee who believes his or her employer has violated the act may file a complaint with the Department of Labor and Industries (Department) within 90 days of the alleged violation.[3] If the Department investigates and issues an infraction, the employer has the opportunity to request a hearing.[4] *886 If the Department then determines that an infraction has been committed, it may fine the employer and/or order reinstatement of the employee, with or without back pay.[5]
As originally enacted, the act provided: "No employee shall have a private right of action for any alleged violation of this act."[6] This language was contained in a section repealed in 1993.[7] Blomster claims the repeal of this section indicates she has a private right to sue Nordstrom for terminating her management position while on medical and pregnancy leave. Nordstrom relies on another section of the act which was not repealed, RCW 49.78.100(1), which indicates that the rights provided by the act are in addition to any other rights provided by law, but "[t]he remedies under this chapter shall be exclusive."
Blomster did not file a complaint with the Department for Nordstrom's alleged violation, but sued Nordstrom directly. Her contention that she has a private right to sue under the act rests on the Legislature's repeal of the section which precluded private rights of action under the act. But, as argued by Nordstrom, the Legislature did not repeal the section which provides that the remedies under the act are exclusive. In light of that language, even if the Legislature intended to permit private actions, the remedies are still limited to those provided in the statute.
If Blomster had pursued her administrative remedies, she could have sued to enforce an order of reinstatement or could have appealed an adverse decision by the Department. But under the plain language of the statute she cannot bring a private action. Allowing any judicial remedy other than those contained in the statute would conflict with the exclusive remedy provision of RCW 49.78.100(1). As stated in a number of cases from our Supreme Court: "`We will not imply a private cause of action when the drafters of a statute evidenced a contrary intent[.]'"[8] Blomster's policy arguments are more properly addressed to the Legislature, not to the courts.
The trial court did not err in granting partial summary judgment dismissing Blomster's private claim against Nordstrom.
Constructive Discharge
Blomster also appeals the trial court's dismissal of her constructive discharge claim. The trial court held that a person who resigns to take a better paying job has not, as a matter of law, been constructively discharged. However, "[u]nder the doctrine of constructive discharge, `an involuntary or coerced resignation is equivalent to a discharge.'"[9]
To establish a claim of constructive discharge, Blomster is required to prove that Nordstrom deliberately made working conditions intolerable for her, that a "reasonable person in her position" would be forced to quit, that she did quit, and she suffered damage as a result of being forced to quit.[10] The question of whether the working conditions were intolerable is one for the trier of fact, unless there is no competent evidence to establish a claim of constructive discharge. Here, contrary to the decision of the trial court and contrary to the arguments made *887 by Nordstrom, Blomster presented evidence supporting these elements sufficient to avoid summary judgment. Blomster's salary was cut in half; she was relieved of all management responsibilities; she lost her management perks; she lost her corporate travel expense account; she was being supervised by people she had trained and supervised before she left on leave; she was given menial tasks considerably different from the duties she possessed before she left; she returned to Nordstrom spending 10 months attempting to work within the system to find an appropriate job, but doors were seemingly closed to her. While Nordstrom may be able to argue that her position had been eliminated, it has not fully explained why Blomster was not given a similar or equivalent position.[11] There is at least a question of material fact as to whether the situation into which Blomster was placed would compel a reasonable person to resign. While at trial it may be a difficult burden for Blomster to prove that the conditions upon her return were "intolerable," it is also true that Nordstrom likely violated its own policies set forth in its employee manuals upon her return. At trial, Nordstrom will have an opportunity to articulate any legitimate nondiscriminatory reason for not providing Blomster with an equivalent position and why its actions did not constitute "intolerable" conditions for her. The trial court erred in finding that Blomster had not met her initial burden of providing sufficient facts to avoid summary judgment.
Admissibility of Portions of Declarations
This court reviews evidentiary rulings under an abuse of discretion standard.[12] Unless the trial court's decision is manifestly unreasonable or based upon untenable grounds or reasons, this court will uphold an evidentiary ruling.
"CR 56(e) is explicit in its requirements which serve the ultimate purpose of a summary judgment motion. Affidavits (1) must be made on personal knowledge, (2) shall set forth such facts as would be admissible in evidence, and (3) shall show affirmatively that the affiant is competent to testify to the matters stated therein."[13] When affidavits are offered to support the position of a party at summary judgment, the affidavits must conform to what the affiant would be permitted to testify to at trial.[14] The court should not consider conclusory statements made by either party.[15]
The trial court summarily granted Nordstrom's motion to strike portions of the declarations of Blomster and Cascio in the order granting summary judgment but gave no reasons for doing so, at least in the record before this court. To have done so, the trial court must have necessarily agreed with the claims Nordstrom made about these declarations.
Nordstrom claimed that Blomster's declaration contradicted her prior sworn deposition testimony, and that the declaration of her expert Cascio lacked personal knowledge of Blomster and of Nordstrom, its policies, and inner personnel workings.
As to Blomster's declaration, a complete review of the record indicates that although there were some portions of her deposition wherein she seemed scattered and did not fully understand the legal questions being asked, and she could not fully explain the reasons for her claim of constructive discharge, a review of all the documents and all of the deposition testimony indicates that what she claimed was consistent. Blomster admitted that Nordstrom's manuals did not use the word "guarantee" as to the availability of a position upon her return, but she expressed her belief that based on the manuals that she would at least be given an equivalent *888 position, with similar duties, benefits, and salary. She also provided a list of events that happened to her which made it clear to her that she "couldn't stay there anymore." Her declaration, although not the epitome of clarity, was not fully inconsistent and contradictory and should not have been stricken.
Nordstrom also argued that Dr. Cascio's declaration was speculative and lacked foundation. But Dr. Cascio's declaration sets forth his obvious qualifications and his experience with this particular company. He had testified in a prior federal case against Nordstrom. He reviewed depositions of Nordstrom executives and other materials relating to management at the company and indicated that he understood the company's promotional system and management structure. He opined that based on his familiarity with Nordstrom and his expertise in the human resource field that Blomster would face much skepticism concerning why the events happened the way they had and that this would lead her to question her continued value to the company. These statements are admissible as an expert opinion given his credentials and his knowledge of Nordstrom. The trial court erred in striking portions of the declaration of Cascio.
The trial court did not err in granting partial summary judgment dismissing Blomster's private claim against Nordstrom; however, the trial court erred in finding that Blomster had not met her initial burden of providing sufficient facts to avoid summary judgment.
The decision of the trial court is affirmed in part, reversed in part, and the case remanded for trial.
NOTES
[1] RCW 49.78.030.
[2] RCW 49.78.070.
[3] RCW 49.78.140.
[4] RCW 49.78.150-.180.
[5] RCW 49.78.190.
[6] See former RCW 49.78.210(2) (1992). Former RCW 49.78.210(1) provided that the Department would cease to administer and enforce the act on the effective date of a substantially similar federal act. Former RCW 49.78.210(2) precluded private rights of action.
[7] Former RCW 49.78.210 (1992), repealed by Laws of 1993, ch. 450, § 1. By the time of the 1993 repeal, Congress had enacted the Federal Family Leave Act. The Legislature again amended the State act in 1997, directing the Department to cease to administer and enforce the act except in two limited circumstances not at issue here. See RCW 49.78.005.
[8] Cazzanigi v. Gen. Elec. Credit Corp., 132 Wash.2d 433, 449, 938 P.2d 819 (1997) (quoting Bird-Johnson Corp. v. Dana Corp., 119 Wash.2d 423, 428, 833 P.2d 375 (1992)).
[9] Bulaich v. AT & T Info. Sys., 113 Wash.2d 254, 258-59, 778 P.2d 1031 (1989) (quoting Micone v. Town of Steilacoom Civil Serv. Comm'n, 44 Wash.App. 636, 639, 722 P.2d 1369 (1986)).
[10] Hill v. GTE Directories Sales Corp., 71 Wash. App. 132, 143, 856 P.2d 746 (1993).
[11] See Johnson v. Goodyear Tire & Rubber Co., 790 F.Supp. 1516 (E.D.Wash.1992).
[12] State v. Powell, 126 Wash.2d 244, 258, 893 P.2d 615 (1995).
[13] Grimwood v. Univ. of Puget Sound, Inc., 110 Wash.2d 355, 359, 753 P.2d 517 (1988); CR 56(e).
[14] Grimwood, 110 Wash.2d at 359, 753 P.2d 517.
[15] PUD of Lewis County v. WPPSS, 104 Wash.2d 353, 361, 705 P.2d 1195, 713 P.2d 1109 (1985).