IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| IN RE: | No. 81583-1-I |
| CHARLES WAGNER, | DIVISION ONE |
|            Respondent, | UNPUBLISHED OPINION |
| and | |
| RENÉ ZOTTOLO, | |
|            Appellant. | |

ANDRUS, A.C.J. — René Zottolo petitioned to modify a parenting plan, requesting that the court impose restrictions under RCW 26.09.191. She alleged that restrictions were warranted because Charles Wagner, the father of the children subject to the plan, had physically and emotionally abused the children, sexually abused Zottolo's adult daughter when she was 12 or 13, and sexually assaulted Zottolo. After a modification trial, the trial court entered a revised parenting plan that did not impose the restrictions Zottolo sought, and Zottolo appeals.

We hold the trial court erred by refusing to admit testimony from one of the children, from Zottolo, and from Zottolo's adult daughter about Wagner's alleged conduct on which Zottolo's modification petition was based. Because these errors were not harmless, we reverse and remand for a new trial.

Citations and pin cites are based on the Westlaw online version of the cited material.

FACTS

During their marriage, René Zottolo and Charles Wagner had three children: H.W., a daughter, A.W., a son, and S.W., a son (collectively the children). At the time of trial, the children were 12, 11, and 9 years old, respectively. Zottolo also has an adult daughter, Victoria, who was 23 at the time of trial, from a previous relationship.

Zottolo and Wagner divorced in September 2013. They agreed to a parenting plan under which Zottolo was the primary residential parent and the children had no overnight time with Wagner. All major decisions about the children's education, non-emergency health care, and religious upbringing were to be jointly made.

In September 2019, Zottolo petitioned to modify the 2013 parenting plan. Zottolo proposed a residential schedule that would reduce Wagner's time with the children. Zottolo's proposed schedule gave each parent two weeks of uninterrupted summer vacation time with the children, but it also provided that the children's overnight time with Wagner would "be supervised at all times by a non-professional supervisor to be determined by both parties." Additionally, Zottolo proposed that she have sole authority to make major decisions about the children.

In her petition, Zottolo alleged that changes to Wagner's time with and decision-making about the children were warranted because Wagner had "engaged in a pattern of emotional abuse of the children," "used emotional manipulation against the children and . . . Zottolo," "used physical abuse against the children," and "neglected his medical duties, and interfered with appropriate medical interventions." Zottolo also alleged that Wagner had "a history of sexual abuse of others, including a minor child." Zottolo further asserted Wagner had neglected his parental duties,

had an emotional or physical problem, and had engaged in abusive use of conflict.

On October 10, 2019, Zottolo filed a declaration in which she testified to alleged physical, sexual, or emotional abuse by Wagner. Zottolo testified that on multiple occasions between 2001 and 2004, Wagner had sex with Zottolo while she was "blacked out." She declared that she began a consensual relationship with Wagner in 2004, ended it in 2006 and informed Wagner she no longer wished to have sex with him, and after this, Wagner "impregnated [her] while [she] was blacked out" and unable to give consent.

Zottolo also testified that in 2015, Victoria, who was then 18, informed Zottolo that Wagner had sexually abused her when she was 12 or 13 years old. Zottolo stated that H.W. had reported that Wagner threatened to " 'beat her black and blue' " and that Wagner had thrown a box at her; that the children had reported being punched by Wagner; and that, in September 2019, A.W. and S.W. reported that Wagner had shoved their heads and faces into a couch after the boys nearly broke a lamp. Zottolo declared that the children had special medical needs and attested to instances of Wagner's not communicating with her about those needs. Zottolo also described safety and other concerns about Wagner's behavior around the children.

In a responsive declaration, Wagner declared that Zottolo's claims were "inflated, misinterpreted, or completely fabricated" and denied having sexual contact with a minor or being abusive to anyone, including his children. He agreed the parenting plan should be changed, but to give him "a more normal overnight schedule on the weekends, while maintaining the evenings during the week." Wagner stated he had reached out to Zottolo about changing the residential schedule, and believed

Zottolo's allegations against him were a result of that request.

Wagner indicated he would be asking the court to appoint a guardian ad litem (GAL) to "get to the bottom of [Zottolo's] claims," but it does not appear that Wagner followed through with this request. Zottolo later moved to have a GAL appointed, but it appears the court denied that request.[1]

In late 2019, Zottolo and Wagner stipulated that adequate cause existed to proceed to a modification trial, which took place over two days in June of 2020. Both Zottolo and Wagner appeared pro se.

At trial, Zottolo attempted to introduce testimony to support her allegations that Wagner had abused the children, had sexually abused Victoria, and had sexually assaulted Zottolo.

First, Zottolo initially indicated that she would prefer not to have H.W. testify "if she doesn't have to." But later, Zottolo proposed having H.W. testify. Specifically, as Zottolo began testifying regarding instances of Wagner's alleged abuse of the children, Wagner objected, stating, "I thought she was supposed to be presenting facts?" The trial court asked Zottolo, "Yes, do you have some facts?" Zottolo responded, "[A]buse happens behind closed doors. I'm not sure about how I could have all facts that pertain to when Mr. Wagner is alone with those children. . . . I did mention to you that [H.W.] is willing to testify, much to, I would prefer to be known as testifying under oath." Zottolo also proffered a transcript of an interview that Child

---

[1] In December 2019, Zottolo filed a motion to appoint a GAL and requested that Wagner pay the fees associated with engaging a GAL. According to a later minute entry, the trial court "reserved on appointing a GAL until [Wagner] could prove that he had financial backing to pay for [a] GAL." The record does not contain any subsequent orders regarding a GAL, and no GAL testified at trial.

Protective Services (CPS) had conducted of A.W. relating to the abuse.

The trial court responded, "That's not . . . admissible before this Court." Following a brief recess, Zottolo asked the court for clarification. She explained, "I am stating that the children have reported to me. . . . I am very concerned that, I understand that I don't have physical proof of what's happened, that does not mean that it didn't happen." She asked, "I just wonder how am I able to present that, my concerns that I have for my children?" The trial court explained that it could not give Zottolo advice as to how she should present her case but stated, unequivocally, "The Court does not hear from children."

Zottolo also attempted, unsuccessfully, to testify that Wagner had sexually assaulted her. Zottolo testified that one of her concerns was Wagner's sexual abuse toward her. Zottolo asserted that Wagner's conduct constituted rape, at which point the trial court interjected, "That may be, but that's not before the Court in this action. And I understand your allegations, I know what they are, but we're not going to go into them in any more detail." Zottolo protested, stating, "[P]er my understanding of the law, if there has been domestic violence and sexual assault in a couple's history, then that can give more credence to one parent having sole authority over legal and medical decisions." The trial court responded, "It's certainly something the Court will consider, yes." But when Zottolo asked the court, "So then would you want me to bring up evidence of that," the court responded, "No."

Finally, Zottolo attempted unsuccessfully to introduce Victoria's testimony regarding Wagner's sexual abuse of her when she was a child. On the second day of trial, before closing arguments, Zottolo asked the trial court, "I know you closed

everything but [Victoria] did agree to testify if you would open it back up." The trial court responded, without further explanation, "I'm not going to do that." In the end, only Zottolo and Wagner testified at trial.

The trial court determined that the restrictions Zottolo had proposed in her modification petition were unwarranted:

> I don't find that the special conditions for reasons for putting limitations on a parent . . . apply here. I don't find that Mr. Wagner has neglected the children, I don't find that he has abused the children, and I don't find that he has emotional or physical problems that merit limiting his ability, his contact with the children.
>
> . . . .
>
> I don't find that there is a history of sexual abuse. The record simply does not establish that. So I don't find any of the special conditions or the limiting conditions that are urged in Ms. Zottolo's motion and I don't find a need for supervising the visitation with the children.

The trial court revised the parenting plan to increase Wagner's residential time to include an overnight every other weekend and did not require Wagner's overnight time to be supervised. And although the court gave Zottolo sole decision making authority with regard to the children's healthcare decisions, other major decisions were to be jointly made. Zottolo appeals.[2]

## ANALYSIS

A court generally cannot modify a prior parenting plan unless it finds, based

---

[2] Wagner did not file a respondent's brief. "A respondent who elects not to file a brief allows his or her opponent to put unanswered arguments before the court, and the court is entitled to make its decision based on the argument and record before it." Adams v. Dep't of Labor & Indus., 128 Wn.2d 224, 229, 905 P.2d 1220 (1995); see also Brown v. Seattle Pub. Schs., 71 Wn. App. 613, 616 n.2, 860 P.2d 1059 (1993) ("A respondent choosing to proceed on appeal without filing a brief 'does so at his peril.' " (quoting Martin v. Schoonover, 13 Wn. App. 48, 51, 533 P.2d 438 (1975))).

on facts that have arisen since or that were unknown to the court at the time of the prior parenting plan, "that a substantial change has occurred in the circumstances of the child or the nonmoving party and that the modification is in the best interest of the child and is necessary to serve the best interests of the child."  RCW 26.09.260(1). There are exceptions to this general rule.  Of relevance here, "[t]he court may reduce or restrict contact between the child and the parent with whom the child does not reside a majority of the time if it finds that the reduction or restriction would serve and protect the best interests of the child using the criteria in RCW 26.09.191."  RCW 26.09.260(4).

Under RCW 26.09.191, if the court finds that a parent has engaged in physical, sexual, or a pattern of emotional abuse of a child, or has engaged in a history of domestic violence or a sexual assault that results in a pregnancy, then (1) the parenting plan "shall not require mutual decision-making or designation of a dispute resolution process other than court action," and (2) "[t]he parent's residential time with the child shall be limited" unless additional express findings are made. RCW 26.09.191(1), (2)(a); see also RCW 26.09.191(2)(n) (providing that court need not limit residential time if it makes additional express findings related to the impact of the parent's conduct on the child and the child's best interests).  These "191 restrictions" are mandatory.  See In re Marriage of Watson, 132 Wn. App. 222, 232, 130 P.3d 915 (2006) (holding that RCW 26.09.191 applies not only to initial parenting plan but also to modifications and observing, "If the court had found that the alleged sexual abuse occurred, it would have been required to restrict [the father]'s residential time and to eliminate the mandatory alternative dispute resolution and

mutual decision-making provisions of the parenting plan.").

The court may also impose discretionary 191 restrictions if it finds that certain factors exist. RCW 26.09.191(3). Relevant here, "the court may preclude or limit any provisions of the parenting plan" based on (1) a parent's neglect or substantial nonperformance of parenting functions, (2) abusive use of conflict by the parent that creates the danger of serious damage to the child's psychological development, and (3) other factors or conduct that the court expressly finds adverse to the child's best interests. RCW 26.09.191(3)(a), (e), (g).

We turn to Zottolo's arguments with the foregoing principles in mind.

A. Exclusion of Testimony Regarding Wagner's Alleged Abuse and Assault

Zottolo argues the trial court erred by refusing to admit testimony (1) from H.W. regarding Wagner's alleged abuse of the children, (2) from Victoria regarding Wagner's allegedly sexually abusing her, and (3) from Zottolo regarding Wagner's allegedly sexually assaulting her. We agree.

"In determining whether any of the conduct described in [RCW 26.09.191] has occurred, the court shall apply the civil rules of evidence, proof, and procedure." RCW 26.09.191(6). On appeal, we review the trial court's evidentiary rulings under an abuse of discretion standard. Blomster v. Nordstrom, Inc., 103 Wn. App. 252, 259, 11 P.3d 883 (2000). A trial court abuses its discretion if its decision "is manifestly unreasonable or based upon untenable grounds or reasons." Id. If the trial court erroneously excludes evidence, reversal is required if the error was not harmless, i.e., if the error "affects, or presumptively affects, the outcome of the trial." Brown v. Spokane County Fire Prot. Dist. No. 1, 100 Wn.2d 188, 196, 668 P.2d 571 (1983).

Here, the trial court refused to allow H.W. to testify regarding Wagner's alleged abuse of the children based on a blanket rule that "[t]he Court does not hear from children." The court later explained that "the Court does not hear testimony from the children themselves because the Court does not want to put a child in the position of testifying either quote 'for' or quote 'against' either parent."

But as a general matter, "[e]very person of sound mind and discretion . . . may be a witness in any action, or proceeding." RCW 5.60.020. While the trial court was understandably reluctant to have a child testify, and there will be cases where excluding a child's testimony constitutes a proper exercise of discretion, this is not such a case. Here, the court imposed a categorical prohibition on hearing from the children without any consideration of the circumstances of the case, including the seriousness of the abuse allegations, the fact that no GAL or other professional had been appointed to investigate and testify regarding the children's best interests, and the fact that there apparently were no witnesses to the alleged abuse except Wagner and the children and, thus, determining whether the abuse occurred would ultimately be a question of weighing Wagner's credibility against the children's. Categorically excluding H.W.'s testimony without considering these circumstances was an abuse of discretion.[3] Cf. Mainline Rock & Ballast, Inc. v. Barnes, Inc., 8 Wn. App. 2d 621, 626, 439 P.3d 676 (2019) ("The failure to exercise discretion is an abuse of

---

[3] The trial court attempted to make up for the lack of testimony from the children by giving Zottolo "some leeway to describe [her] conversations with the children." This, too, was an abuse of discretion. To the extent the trial court reasoned that it was appropriate to refuse to hear from H.W. because it could receive H.W.'s testimony through Zottolo, that reasoning was based on untenable grounds given that what H.W. reported to Zottolo constituted inadmissible hearsay under ER 801 and 802.

discretion.").

The trial court also abused its discretion by refusing to allow Zottolo to testify regarding Wagner's allegedly sexually assaulting her and by refusing to allow Victoria to testify regarding Wagner's allegedly sexually abusing her when she was a child. Although the trial court did not expressly state the basis for its rulings, the record reflects that the court excluded Zottolo's and Victoria's testimony on the basis of relevance. Specifically, the trial court's comment that Zottolo's allegations were "not before the Court in this action," indicates the court believed it was irrelevant whether Wagner sexually assaulted Zottolo. And when Zottolo attempted to testify as to disclosures that Victoria made to her when Victoria was 18, the trial court stated, "I'm not going to permit that testimony," explaining that it was hearsay and "Victoria is not one of the children whose welfare is at issue here." When Zottolo protested that "[Victoria] was one of his kids and he touched her," the trial court responded, "Yes, but Victoria's welfare is not at issue in this case. Victoria is an adult."

But a history of domestic violence or a sexual assault that results in pregnancy—both of which Zottolo alleged Wagner committed—trigger mandatory 191 restrictions. RCW 26.09.191(1)(c), (2)(a)(iii); see also RCW 26.50.010(3) (domestic violence includes sexual assault of an intimate partner or household member). So does a finding that a parent has engaged in sexual abuse of a child. RCW 26.09.191(1)(b), (2)(a)(ii). They also require the court to make additional, express findings before it can determine that limits on the offending parent's residential time are not warranted. RCW 26.09.191(2)(n). Thus, Zottolo's testimony about Wagner's sexually assaulting her, and Victoria's testimony about Wagner's

sexually abusing her when she was 12 or 13, were relevant to the trial court's determination whether to impose 191 restrictions on Wagner. Refusing to admit this testimony on relevance grounds was an abuse of discretion.

In short, the trial court erred by refusing to allow H.W. to testify as to Wagner's alleged abuse of the children, by refusing to allow Zottolo to testify as to Wagner's allegedly sexually assaulting her, and by refusing to allow Victoria to testify as to Wagner's allegedly sexually abusing her when she was a child.

These errors were not harmless. The trial court concluded that no mandatory 191 restrictions were warranted because the evidence before it did not establish that Wagner had abused the children or engaged in sexual abuse. We cannot conclude that the trial court would have made the same determination had it heard testimony from H.W., Zottolo, and Victoria about Wagner's alleged abusive and assaultive conduct. We also cannot say that, had such evidence been admitted, the trial court would have concluded that no discretionary 191 restrictions were warranted based on the best interests of the children. Indeed, the record reflects that H.W. was a witness not only to Wagner's alleged abuse of the children but also to instances of Wagner's alleged abusive use of conflict and other alleged conduct that would be relevant to determining whether discretionary 191 restrictions were warranted. Accordingly, reversal is required. See Driggs v. Howlett, 193 Wn. App. 875, 903, 371 P.3d 61 (2016) ("When the reviewing court is unable to know what value the [factfinder] placed on . . . improperly admitted evidence, a new trial is necessary. The rule should be the same when the appeals court may not judge what value a [factfinder] may place on improperly excluded evidence." (citations omitted)).

B. <u>Additional Issues Raised on Appeal</u>[4]

Zottolo next contends the trial court erred by not admitting the exhibits she offered under ER 904. "ER 904 is designed to expedite the admission of documentary evidence." <u>Lutz Tile, Inc. v. Krech</u>, 136 Wn. App. 899, 903, 151 P.3d 219 (2007). "Under the rule, certain documents are deemed admissible and authentic before trial unless the party opposing admission objects consistent with the timing provisions of the rule." <u>Id.</u>; ER 904(a), (c). In the absence of a compelling reason for failing to timely object, it is error to exclude ER 904 exhibits to which no objection was made, except on the basis of relevance. <u>See</u> ER 904(c)(2) ("objection on the grounds of relevancy need not be made until trial"); <u>Miller v. Arctic Alaska Fisheries Corp.</u>, 133 Wn.2d 250, 260, 944 P.2d 1005 (1997) (holding that trial court erred by excluding letters as hearsay where letters were timely disclosed under ER 904 and party opposing admission "could offer no compelling reason for its failure to timely object").

Zottolo timely served an ER 904 notice and Wagner failed to object to any exhibits she listed. Accordingly, any documentary evidence in Zottolo's notice that fell within the scope of ER 904 was presumed admissible subject to relevancy objections. Yet when Zottolo proffered her ER 904 exhibits, the trial court told Zottolo that she had to satisfy the Rules of Evidence, including hearsay rules, before it would admit any of her exhibits. The trial court erred to the extent that it declined to admit those exhibits that fell within the scope of ER 904 on the basis of an evidentiary rule

---

[4] Because we reverse and remand for a new trial, we need not reach the remaining issues raised in Zottolo's appeal. We address selected issues to provide guidance on remand.

other than relevance.[5]

Zottolo also argues the trial court erred by refusing to admit (1) a series of text messages wherein Wagner's friend "admitted that [H.W.] ran crying to her following her being hit in the stomach," (2) a CPS interview wherein A.W. reported being punched, and (3) medical reports documenting A.W.'s report of Wagner's abusive behavior. Zottolo argues the trial court abused its discretion inasmuch as it excluded these exhibits as inadmissible hearsay. But Zottolo did not make this argument below and, thus, she has waived it for purposes of appeal. See RAP 2.5(a) ("The appellate court may refuse to review any claim of error which was not raised in the trial court.").

Furthermore, Zottolo did not mark these exhibits for identification and they are not a part of the record on appeal. The record is thus insufficient for us to determine whether the exhibits would have qualified for a hearsay exception. In any case, to the extent Zottolo argues that the trial court erred by refusing to admit the exhibits under Federal Rule of Evidence (FRE) 807's "catch-all" provision,[6] Zottolo is incorrect. The Federal Rules of Evidence did not apply in this state court proceeding,

---

[5] Zottolo's proffered ER 904 exhibits were not marked for identification and are not part of the record on appeal. But it appears based on the descriptions in Zottolo's ER 904 notice, that some of her ER 904 exhibits may not have fallen within the scope of the rule. See Lutz Tile, 136 Wn. App. at 904 ("[ER 904] is only designed to expedite the admission of documentary evidence that is objective and for which cross-examination is not necessary. Documents that contain subjective facts, opinions, and conclusions are not properly admitted under ER 904 because the parties should have a chance to cross-examine the opinions and conclusions and present alternate opinions." (citation omitted)).

[6] FRE 807 provides that "a hearsay statement is not excluded by the rule against hearsay even if the statement is not admissible under a hearsay exception" if the following conditions are satisfied: (1) "the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of the circumstances under which it was made and evidence, if any, corroborating the statement," (2) "it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts," and (3) notice is provided in accordance with the rule.

No. 81583-1-I/14

and although the federal courts adopted a catch-all concept in FRE 807, Washington expressly declined to do so. <u>State v. Sua</u>, 115 Wn. App. 29, 49, 60 P.3d 1234 (2003).

As a final matter, Zottolo asserts that by not imposing restrictions on Wagner, the trial court violated the Crime Victims' Rights Act, 18 U.S.C. § 3771. That federal statute does not apply in the context of the state court proceedings at issue in this appeal.

We reverse and remand for a new trial.

Andrus, A.C.J.

WE CONCUR: